FOURTH DIVISION
April 20, 2006

No. 1-04-2406

| | | |
|---|---|---|
| HEALTH COST CONTROLS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD SEVILLA and EDWARD M. BURNES, | ) | |
| | ) | |
| Defendants-Appellants and | ) | |
| Counterplaintiffs-Appellants | ) | |
| | ) | No. 94 M2-1217 |
| (Health Cost Controls of Illinois, Inc., and Health Cost Controls of America, Inc., | ) | |
| | ) | |
| Counterdefendants-Appellees; | ) | |
| | ) | |
| Continental Assurance Company, | ) | Honorable |
| | ) | John K. Madden, |
| Third-Party Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Counterplaintiffs-appellants Richard Sevilla and his attorney, Edward M. Burnes, appeal from the circuit court's dismissal of certain counts of their amended counterclaim against counterdefendants Health Cost Controls of Illinois, Inc., and Health Cost Controls of America, Inc., (collectively, HCC) and third-party defendant Continental Assurance Company (CNA) as well as the denials of their multiple motions to certify several classes of counterplaintiffs or alternative classes of counterdefendants. For the reasons that follow, we affirm in part and reverse in part.

HCC is an Illinois corporation with its principal place of business in Schaumburg. Its primary business consists of asserting subrogation rights on behalf of health maintenance

organizations, health insurance carriers, and other health care plans against parties who may be liable in tort to those organizations' insureds. HCC also asserts the contractual rights of health care plans against their members and insureds.

CNA would often contract with HCC to assert subrogation claims and reimbursement liens on its behalf against tortfeasors and insureds. The contracts provided that CNA would assign its rights to assert and collect reimbursement liens to HCC, that HCC would have broad authority and discretion in asserting and pursuing the assigned liens, that HCC would assume liability and indemnity in pursuing the liens on CNA's behalf, and that HCC would comply with state and federal laws in asserting subrogation claims and reimbursement liens.

At issue in this case are the circuit court's denials of counterplaintiffs' motions to certify four distinct classes consisting of plaintiff insureds in counterclaims against defendants HCC and the health plans on whose behalf HCC asserted reimbursement liens against the insureds without reduction pursuant to the common fund doctrine. The four class actions counterplaintiffs sought to certify are as follows: (1) all individuals in all states who were insured by health plans on whose behalf HCC asserted reimbursement liens, versus HCC; (2) all CNA-insureds in all states versus HCC; (3) all insureds of all plans residing in Illinois versus HCC; and (4) all CNA-insureds residing in Illinois versus HCC.

The facts underlying the initial litigation are undisputed. In May 1992, Sevilla was covered under a health insurance policy issued by CNA through his employer. That month, he was involved in a car accident and suffered injuries. CNA disbursed $2,483.71 in medical benefits for treatment of Sevilla's injuries. Through his attorney Burnes, Sevilla subsequently

filed suit against the individuals believed responsible for the accident. Sevilla and the party he sued eventually entered into a settlement for $22,000.

While settlement negotiations were pending, HCC asserted a lien against Sevilla and on behalf of CNA in subrogation for the $2,483.71 CNA had disbursed in medical benefits. HCC sent a notice of lien to Burnes for the amount CNA had paid for Sevilla's medical care costs incurred as a result of his injuries. HCC sought reimbursement of the $2,483.71 CNA had disbursed to Sevilla pursuant to a provision in his insurance policy. The tortfeasor's insurer, Allstate Insurance Company, issued a check payable to Sevilla, Burnes, and HCC, for the amount of HCC's claimed lien and issued another check for the remaining balance of the settlement proceeds to Sevilla and Burnes.

HCC was given possession of the settlement check, but Sevilla and Burnes refused to endorse it, claiming HCC was not entitled to the full amount and that the amount of recovery was subject to the common fund doctrine and therefore had to be reduced by one-third for the attorney fees Sevilla incurred in obtaining the settlement. HCC filed suit in subrogation, seeking an order requiring Sevilla and Burnes to endorse the check in satisfaction of HCC's lien. In their answer, counterplaintiffs maintained that CNA was obligated to bear the costs of Sevilla's attorney fees and asserted as an affirmative defense that HCC and CNA were obligated to bear the proportionate costs and expenses incurred by Sevilla's attorneys in obtaining the settlement, pursuant to the common fund doctrine. Counterplaintiffs made similar allegations in a class action counterclaim against HCC and CNA on behalf of other CNA insureds against whom HCC had asserted reimbursement liens without reduction in consideration of the common fund

doctrine.

In 1995, HCC attempted unsuccessfully to remove its suit to federal district court, claiming that the counterclaim raised issues justiciable only under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. ¢ 1001 *et seq*. (1994)). Counterplaintiffs filed a motion to remand the case to state court, which the federal district court granted, finding that only a defendant could seek removal pursuant to federal statute.

In 1997, in the circuit court, HCC moved to dismiss its own suit as well as Sevilla and Burnes' counterclaims for lack of subject matter jurisdiction. In response, counterplaintiffs filed additional motions for class certification and for summary judgment. Ultimately, the circuit court ruled only on HCC's motion to dismiss for lack of subject matter jurisdiction, which it granted, and dismissed all claims.

Afterward, in April 1998, counsel for HCC sent a letter to Counterplaintiffs' counsel waiving HCC's previously asserted claim for reimbursement of medical benefits. The letter purported to waive and release any and all rights HCC may have had to reimbursement or subrogation against Sevilla.

Counterplaintiffs appealed to this court, contending that the circuit court's dismissal of all claims was erroneous in that the common fund doctrine was a question of state and not federal law and that the circuit court therefore maintained jurisdiction over them. HCC argued that the initial filing of its complaint in state court was erroneous because the claims it sought to litigate arose under ERISA. This court reversed, finding that the circuit court had jurisdiction over HCC's claim as an action seeking enforcement of an asserted lien by an insurer, as well as

subject matter jurisdiction over counterplaintiffs' counterclaims as actions under the common fund doctrine, which were not preempted by ERISA. Health Cost Controls v. Sevilla, 307 Ill. App. 3d 582, 588-92 (1999).

On remand, counterplaintiffs were granted leave to replead their counterclaims and their motions for class certification. The circuit court gave precedence to HCC's motion to dismiss on the basis of mootness, which counterplaintiffs challenged on grounds that a controversy continued to exist between the parties and that HCC's tendered waiver was disingenuous. The circuit court denied HCC's motion and granted counterplaintiffs' request for leave to amend their previously filed class definitions.

In November 2000, HCC's successor in interest, Primax Recoveries, Inc. (Primax) filed a new complaint against Sevilla in federal district court seeking a declaratory judgment establishing the relative rights and obligations of the parties and to enjoin Sevilla from intervening with CNA's rights to subrogation and reimbursement. Sevilla moved for summary judgment, challenging the federal court's jurisdiction over the matter and asserted the affirmative defense of waiver, relying on the April 1998 letter from HCC's counsel and its motion to dismiss the state action on mootness grounds.

The federal district court granted Sevilla's motion, finding that Primax's enforcement action was not under the exclusive jurisdiction of federal statute (ERISA) and that waiver applied, as the existence of any case or controversy was negated by HCC's release of any and all claims, which the court characterized as unlimited with respect to both state and federal actions. Primax Recoveries, Inc. v. Sevilla, No. 00C6869 (N.D. Ill. 2002).

1-04-2406

Primax appealed, contending that a controversy continued to exist because Sevilla rejected HCC's release and that ERISA governed the underlying action. The Seventh Circuit affirmed, finding that the underlying action was governed by the common fund doctrine under Illinois law and not preempted by ERISA, and that Primax had no standing to bring its action because it had released its claim against Sevilla. Primax Recoveries, Inc. v. Sevilla, 324 F.3d 544, 549-50 (7th Cir. 2003).

In the proceedings before the circuit court, one of the documents produced in discovery was a 1997 affidavit by Primax's general counsel, Henry S. Romano, attesting that CNA had assigned numerous claims for reimbursement to HCC and had granted it broad discretion in their prosecution and collection, and that HCC had obtained recovery on the majority of them and in some cases accepted amounts less than those claimed.

On the bases of Romano's affidavit and additional discovery documents, counterplaintiffs filed an amended class action counterclaim, which, in counts I(a) and II(a), expanded class allegations to include all CNA and non-CNA insureds against whom HCC had asserted reimbursement claims without reduction pursuant to the common fund doctrine. The remaining counts related only to CNA plan participants.

HCC filed a motion to dismiss counts I(a) and II(a) of counterplaintiffs' counterclaim alleging that HCC could not be held liable to the putative class members in the counterclaim and that the counterclaim failed to join necessary parties because HCC could not be sued as an agent of CNA or other insurance providers. HCC also filed a motion for summary judgment, contending that Sevilla had no right to an allocation of attorney fees from funds which he solely

possessed, that Sevilla and Burnes were collaterally estopped from asserting claims against HCC because they acknowledged Primax's waiver and release when the parties litigated in federal court, and that CNA's reimbursement policies expressly precluded application of the common fund doctrine.

The circuit court granted counterplaintiffs' motion for summary judgment as to Sevilla's individual claims against HCC in count I of the amended counterclaim, which sought declaratory relief stating that Sevilla was entitled to attorney fees, costs, and expenses incurred in connection with recovering damages from the third-party tortfeasor; the court did not explicitly state the relief to which Sevilla was entitled. The court denied HCC's motion for summary judgment except as to Burnes's claims, which the court dismissed as moot in light of the grant of summary judgment to Sevilla.

Following a hearing on the remaining motions, the circuit court entered an order dated May 21, 2004, granting HCC's motion to dismiss counts I(a) and II(a) of the amended counterclaim and denying counterplaintiffs' renewed motions for class certification and for summary judgment.

Counterplaintiffs filed a motion to reconsider, seeking certification of a class to include individuals against whom HCC had sought reimbursement without offset under the common fund doctrine or, alternatively, a class of all CNA insureds against whom reimbursement claims were not reduced pursuant to the common fund doctrine, in addition to reaffirmation of the grant of summary judgment in favor of Sevilla individually. Following argument, the circuit court entered an order granting counterplaintiffs leave to restate their motion to certify a class of only

CNA insureds and reaffirming the grant of summary judgment as to Sevilla individually.

Counterplaintiffs restated their motion, and following a hearing, the circuit court entered an oral pronouncement, finding that counterplaintiffs' claims were "too individualized to support a class" and that a class of claimants beyond CNA insureds would not be suitable. The court remarked that the lack of joinder of insurers beyond CNA was problematic and that a class limited to CNA insureds would likely involve claims that were too highly individualized to support a class action.

The court noted that the presiding judge was scheduled to leave the bench soon after the latest proceedings had taken place, and entered an order dated June 10, 2004, granting counterplaintiffs leave to file a new motion to certify a class limited to CNA insureds residing in Illinois.

Counterplaintiffs sought to amend and supplement their motion to reconsider the circuit court's May 21, 2004, order, seeking to certify a class of all Illinois insureds of plans not limited to those administered by CNA or, in the alternative, a class of CNA insureds residing in Illinois.

At the hearing on counterplaintiffs' motion to certify the narrower classes on July 8, 2004, the parties' counsel and the circuit court repeatedly noted that the presiding judge's departure from the bench was imminent, acknowledged that the court's prior denials of the motions to certify the larger classes were final and appealable, but expressed reservations about passing the most recent motion to a succeeding judge for resolution. The following colloquy took place:

> "THE COURT: Okay. Otherwise it will leave up to the next judge an

interesting question of whether or not ready to go up for review of my refusal to certify. What do you want to do?

MR. KRISLOV [counsel for counterplaintiffs]: We would like to take it up [for appeal].

THE COURT: So you want me to deny?

MR. BELOFSKY [counsel for HCC]: We would ask that your Honor vacate the order of June 10, 2001 [sic]. There is a copy here, specifically Paragraph 1, which granted leave to file another motion for class certification. And it seems to me at this point that we have * * *

THE COURT: Very good. That is not problematic.

MR. KRISLOV: We don't want to get rid of * * *

THE COURT: The baby class.

MR. KRISLOV: We don't want to get rid of the baby class. We do want to bring the issue of the greater class.

THE COURT: Sounds like you want to have your cake and eat it according to Counsel here. It's jurisdictionally problematic to bring certification up to the Appellate Court when we [sic] got this other issue.

MR. KRISLOV: It is an issue which would accelerate the resolution of the case so that your honor could certify the question.

THE COURT: That's under a different section. And I don't know if it would. If you want to put this over to the next judge and meanwhile try to compromise the

situation, and if you can't, then you know whatever you want to do.

MR. KRISLOV: Your Honor, we are more than happy to * * *

THE COURT: You want to strike that paragraph? You want to vacate that paragraph?

MR. BELOFSKY: Yes, your Honor, I do.

THE COURT: Then certify and send to the Appellate Court, you want to do that?

MR. KRISLOV: If the order takes place so that it would be * * * we would be denied leave to amend.

THE COURT: Here. Say it again for certification.

MR. BELOFSKY: The Paragraph No. 1 of the order of June 10 of this year is vacated. And the motion to reconsider is denied.

THE COURT: Yes.

MR. BELOFSKY: And I think at that time we have grounds for [Supreme Court Rule] 304 certification. I think we'll vest jurisdiction in the appellate court.

MR. KRISLOV: You won't contest it?

MR. BELOFSKY: I wish I could confer jurisdiction on the appellate court. I don't see any reason to contest it. And certainly if it winds up not being a final order, you're not prejudiced.

MR. KRISLOV: You won't take the position before the appellate court that there is no jurisdiction?

MR. BELOFSKY: I represent on the record in good faith that I think that this is the jurisdictional problem.

THE COURT: He wants it vacated so we don't run into jurisdictional problems with the Appellate Court.

MR. KRISLOV: The one thing that would remain, though, is that the individual judgment with respect to Mr. Sevilla in favor of Mr. Sevilla, that summary judgment remains.

MR. BELOFSKY: That's I think addressed * * *

THE COURT: Didn't I grant summary of [sic] him?

MR. KARNUTH (Counsel for counterplaintiffs): Yes.

MR. BELOFSKY: And I think your Honor addressed that in Paragraph 3 of the June 10, 2004, order.

THE COURT: Fine. Real good. That doesn't affect him. We are just knocking out that one paragraph. Everything else remains the same. Sounds good?

MR. KRISLOV: Sounds fine.

THE COURT: Put it in an order. I'll be happy to sign it."

Following the hearing, the circuit court vacated its previous order granting counterplaintiffs leave to refile their motion to certify a narrower plaintiffs' class of only CNA insureds and denying their motions to reconsider. The order read in relevant part as follows:

"It is hereby ordered that Paragraph No. 1 of the court's order of June 10, 2004, granting Sevilla [and] Burnes leave to file another motion

for class certification is hereby vacated and held for naught and their

motion to supplement and amend is withdrawn.

It is further ordered that the motions to reconsider by Sevilla and

Burnes filed June 7, 2004, are denied."

On counterplaintiffs' request, the circuit court included language finding that there was no just cause or reason to delay enforcement or appeal of its order, pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a).

Counterplaintiffs now appeal, contending that the circuit court erred in denying their motions to certify all four of the putative classes described above. Taken with this appeal is HCC's motion for an order striking certain portions of counterplaintiffs' reply brief and preventing them from arguing on appeal that the circuit court abused its discretion in denying their motions to certify plaintiff classes limited to only CNAinsureds. HCC argues that the last order entered by the circuit court was merely an attempt to accommodate counterplaintiffs' desire to appeal the denial of their motions to certify wider plaintiff classes consisting of all nationwide and Illinois insureds (CNA and non-CNA) against whom HCC had asserted reimbursement liens, and that the issue of the denial of counterplaintiffs' motions to certify narrower plaintiff classes of only CNA insureds has been waived for purposes of appeal. Because we have a complete record before us, and in the interests of furthering judicial economy by resolving all issues presented to this court, we deny the motion.

In order to maintain a class action, a party may sue or be sued as a representative of an interested class only if:

1-04-2406

"(1)  The class is so numerous that joinder of all members is impracticable.

(2)  There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)  The representative parties will fairly and adequately protect the interest of the class.

(4)  The class action is an appropriate method for the fair and efficient adjudication of the controversy."  735 ILCS 5/2-801 (West 2004).

A complainant seeking to maintain a class action must allege facts sufficient to bring the claim within the above statutory prerequisites; failing that, the complaint should be dismissed. Weiss v. Waterhouse Securities, Inc., 208 Ill. 2d 439, 451 (2004).

The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an interest to be reimbursed from that fund for litigation costs. Scholtens v. Schneider, 173 Ill. 2d 375, 385 (1996).  An attorney who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable fee from the fund.  Scholtens, 173 Ill. 2d at 385.  Such a reimbursement is justified by the desire to avoid unjustly enriching those who benefit from the attorney's efforts by spreading the costs of litigation to the beneficiaries of the fund.  Scholtens, 173 Ill. 2d at 385.

The grant or denial of a motion for class *certification is within the sound discretion of the trial court, and we will not disturb such a determination absent a clear abuse of discretion or unless the circuit*

court applied impermissible legal criteria. Haywood v. Superior Bank FSB, 244 Ill. App. 3d 326, 328 1993 Purcell Wardrope Chartered v. Hertz Corp. 175 Ill. App. 3d 1069 1988 . The denial of a party's motion to certify a class is one this court reviews for an abuse of discretion. However, the grant of an opposing party's motion to dismiss is one we review *de novo*. See Weiss, 208 Ill. 2d at 453. Nevertheless, class action allegations may be properly dismissed where there is no possibility that a claim can be maintained as a class action. Weiss, 208 Ill. 2d at 450.

"The scope of appellate review is limited to an assessment of the trial court's exercise of discretion and does not extend to an independent, *de novo* evaluation of the facts alleged to justify litigation of the case as a class action." Avery v. State Farm Mutual Automobile Insurance Co., 321 Ill. App. 3d 269, 279 (2001), *rev'd on other grounds*, 216 Ill. 2d 100 (2005). In reviewing a circuit court's denial of class certification, a reviewing court is only to assess the discretion exercised by the trial court and may not instead assess the facts of the case and conclude for itself that a case is well-suited for a class action. McCabe v. Burgess, 75 Ill. 2d 457, 465 (1979). Our review is thus limited to determining whether as a matter of law a class action is inappropriate, and in order to reverse, we would be required to find that no other reasonable conclusion could be reached but that a class action would be appropriate. See Tassan v. United Development Co., 88 Ill. App. 3d 581, 593 (1980).

It appears from the record that the circuit court either denied counterplaintiffs' motion for class certification or granted HCC's motion to dismiss on the basis that counterplaintiffs' claims in support of wider putative classes were too highly individualized to support either a plaintiff

class of CNA and non-CNA insureds or a defendant class of CNA and non-CNA insurers, and thus failed to fulfill the commonality element required under the class action statute. In any event, the parties agreed at oral argument that the appropriate standard of review is abuse of discretion. However, where it is apparent that the circuit court did not exercise discretion of any kind, this court owes a lesser degree of deference.

Counterplaintiffs initially contend on appeal that the circuit court erred in not holding HCC liable for refusing to reduce the amounts of the liens it asserted pursuant to the common fund doctrine because the contracts between HCC and its clients indicated that HCC had been assigned its clients' rights to reimbursement and thus owned the reimbursement liens it asserted against Sevilla and other insureds who had recovered the costs of their medical benefits through settlements. Counterplaintiffs argue that the contracts between HCC and CNA, as well as other insurance carriers, legally assign the carriers' rights to reimbursement to HCC and in effect render any legal actions that HCC takes pursuant thereto solely the actions of HCC and not the carriers. Counterplaintiffs alternatively argue that, if HCC acted as an agent of its clients, it can still be held solely liable because it exceeded the contractual authority its clients bestowed in contracting with HCC to pursue their rights to reimbursement, and that joinder of HCC's clients was thus unnecessary.

HCC responds that its assertion of reimbursement claims on behalf of insurance carriers was done on behalf of the carriers with HCC acting as their agent and not solely at HCC's discretion or solely for HCC's benefit and, thus, that any claims Sevilla and Burnes assert under common fund doctrine lie against the insurance carriers, not against HCC. HCC also argues that

it did not exceed its contractual authority in asserting reimbursement liens on behalf of its clients and cannot be held solely liable, and that counterplaintiffs' failure to join its clients as necessary parties was fatal to their counterclaim.

In general, agency is a consensual, fiduciary relationship in which the principal has the right to control the activities of the agent and the agent has the power to conduct legal transactions in the principal's name. Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 559 (2005). A principal can only be held liable for the wrongful conduct of its agent if the agent was acting within the scope of its employment at the time of the alleged wrongful act. Knauerhaze, 361 Ill. App. 3d at 559. An agent that exceeds its authority or takes an active part in violating a duty the principal owes to a third party may be held liable to that third party. Landau v. Landau, 409 Ill. 556, 564 (1951); Grover v. Commonwealth Plaza Condominium Ass'n, 76 Ill. App. 3d 500, 507 (1979).

In this situation, CNA and other insurance carriers hired HCC for the specific task of seeking reimbursement on claims of insureds who had recovered in tort for the costs of their medical expenses. In the sense that HCC was acting on CNA and the other carriers' behalf, it could arguably be perceived as an agent. However, the nature of the contracts under which HCC operated and the seemingly unfettered authority those contracts often granted HCC in seeking reimbursment would seem to weigh against holding HCC's alleged principals liable.

In other cases involving HCC's successor, Primax, federal courts have characterized the entity's contractual relationship with its clients as more of an assigment than agency. The Seventh Circuit found that "[HCC] does not consult with the administrator on whether to take

legal action," and that the claims HCC asserts "become [HCC]'s property and [HCC] determines in its sole discretion" which claims to pursue. Health Cost Controls of Illinois, Inc. v. Washington, 187 F.3d 703, 709 (7th Cir. 1999). In that particular case, the court deemed the authority its clients granted HCC was "broader power than that of a lawyer hired to handle a claim, or of an ordinary collection agent." Health Cost Controls, 187 F.3d at 709.

The language of HCC's contracts with CNA, coupled with Romano's affidavit, indicate that CNA legally assigned its claims for reimbursement to HCC and granted HCC very wide discretion in deciding whether and how to pursue those claims. While CNA no doubt retains some interest in the recovery of those claims, the evidence strongly weighs against finding an agency relationship between CNA and HCC. Accordingly, HCC could be held liable for any improper actions it took pursuant to the aforementioned contracts.

However, liability is not a genuine issue in this appeal. Indeed, the circuit court entered summary judgment in Sevilla's favor, finding HCC liable to him as an individual. Moreover, HCC has foregone pursuit of the two-thirds of the $2,483.71 CNA disbursed in health benefits to which it would legally be entitled in reimbursement, leaving Sevilla in possession of the amount that he alleged HCC illegally sought to recover. We have no quibble with the circuit court holding HCC liable to Sevilla as to the claim it sought to assert on CNA's behalf. The real issue here is whether counterplaintiffs may pursue similar liability on behalf of a larger class of insureds and against a larger class of HCC's many clients. We therefore proceed to our review of the circuit court's dispositions of counterplaintiffs' motions to certify the four putative classes described above.

1-04-2406

Counterplaintiffs next assert that a plaintiff class that would include all plan participants against whom HCC asserted a reimbursement lien without offset for the common fund dosctrine would be appropriate. Counterplaintiffs maintain that all such participants were identically injured by HCC's assertions of liens and that their interests thus fulfill the commonality requirement of the class action statute. Counterplaintiffs rely on this court's pronouncements that reimbursement pursuant to health plans is subject to reduction under the common fund doctrine and maintain that applying the common fund doctrine to HCC's recovery efforts implicates important, legitimate interests on the part of Illinois in preventing the unjust enrichment of HCC.

Counterdefendants respond that counterplaintiffs' claims cannot meet the commonality and predominance requirement because the contracts between HCC and its non-CNA clients contain significant differences in their operational language.

In cases such as this, where an entity's relationships with other members of a putative class are established by the presence of several individual contracts, any significant differences in the operative language of those contracts militates against a finding of commonality for purposes of class certification. See Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 128 (2005).

In reviewing the operational contracts that HCC had with non-CNA insurance providers to assert reimbursement liens on their behalf, we note several differences in operational language. Accordingly, the circuit court's denial of counterplaintiffs' motion to certify classes of defendant insurance providers beyond CNA, both in Illinois and throughout the United States,

1-04-2406

was proper.

Likewise, we find that the circuit court properly denied certification of a plaintiff class of both Illinois and non-Illinois residents. In subjecting potential foreign defendants to class action claims based on state common law, state courts must comply with the constitutional guarantee of due process in the form of notice and adequate representation, and must avoid applying the forum state's law where it is in substantive conflict with a defendant class member's resident jurisdiction; failure to do so is arbitrary and unfair and exceeds constitutional limits. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2979 (1985). Where there are significant outcome-determinative differences between the law of Illinois and the laws of other states regarding a particular action, Illinois courts should not grant class action status. See Avery, 216 Ill. 2d at 214.

Here, the common fund doctrine is the settled law in Illinois, but it may not be the settled law in the relevant jurisdictions of putative out-of-state plaintiff and defendant class members. Allowing a class action to proceed in this instance could result in liability on the part of putative defendants where they never violated the relevant law in their home states as well as windfalls to putative plaintiffs who suffered no wrongdoing under the laws of their home states. Accordingly, we conclude that the circuit court properly denied certification of classes consisting of foreign insureds and foreign insurance carriers.

As for the final and narrowest putative class, that consisting of CNAinsureds residing in Illinois versus HCC, it is not clear from the record before us that the circuit court denied its certification based on the statutory prerequisites. Rather, it appears to us that the court initially

sought further pleadings regarding the class, then reversed course and vacated its previous order to allow further pleading, mainly in consideration of the presiding judge's imminent departure from the bench and in an effort to provide the parties with a final order and allow them to proceed to appellate review.

Of all the classes counterplaintiffs sought to certify, this one may be the most legally viable, as CNA's contracts with HCC to assert liens against its Illinois insureds are relatively uniform and the common fund doctrine would apply to recoveries sought from CNA insureds residing in the state.

An action may be maintained as a class action only if the court finds that there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members. 735 ILCS 5/2-801 (West 2000). Although the section does not require the presence of both a common question of law and a common question of fact, a finding of a common question of law or fact cannot alone satisfy the statutory requirement because said common question must predominate over individual ones. Miner v. Gillette Co., 87 Ill. 2d 7, 17 (1981).

Although a class action need not be predicated on a single transaction but may arise out of a long series of transactions based on similar acts or documents, so long as the documents are not materially different (Avery, 216 Ill. 2d at 128), a necessary showing is that successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members. Society of St. Francis v. Dulman, 98 Ill. App. 3d 16, 18 (1981); Goetz v. Village of Hoffman Estates, 62 Ill. App.

3d 233, 236 (1978). The fact that class members' claims for damages may have been in varying amounts which need to be determined separately does not mean that common questions do not predominate. Saldana v. American Mutual Corp., 97 Ill. App. 3d 334, 337 (1981).

If counterplaintiffs can show that the claims of CNA insureds in Illinois are derived from a long series of transactions conducted through similar actions and that HCC did not reduce the subrogated sum by the proportionate reduction for attorney fees pursuant to the common fund doctrine as a policy or common conduct, then each transaction would be similar in nature and the fact that each was separate would not militate against class certification.

Furthermore, a necessary showing required for a common question to predominate over individual ones is that successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members. Society of St. Francis, 98 Ill. App. 3d at18; Goetz, 62 Ill. App. 3d at 236.

Here, CNA's contracts with its insureds and its agreements with HCC may be shown to be sufficiently similar so as to establish a right of recovery for all class members insured by CNA in Illinois. Each class member had a contract with CNA. HCC collected on the contract likely pursuant to the same contract it always signed with CNA. The common fund doctrine required reduction for attorney fees for any recovery from Illinois residents. If counterplaintiffs could demonstrate that the process whereby HCC performed its operations concerning Illinois residents insured by CNA was the same in each instance, then the establishment of Sevilla's claim would open the door to

recovery for other class members.

Lastly, the fact that class members' claims for damages may be in varying amounts which would need to be determined separately does not mean that common questions do not predominate. See Saldana, 97 Ill. App. 3d at 337 (noting in class action certification claim where employer allegedly did not pay interest on workers' compensation awards that variation in amounts of damages did not defeat predominance of common question). In the current case, although each insured may have individual damages derived from medical expenses subrogated by his or her insurance company, the need to determine these amounts individually would not negate class action certification.

Accodingly, we find that a class of CNA insureds in Illinois may be allowable for certification in this case. The transactions may be shown to be similar in nature and performed through similar conduct. In addition, a finding of relief for Sevilla may allow for recovery for other members of the class, and the status of each class member may not be so vague as to deny certification. Consequently, a class of Illinois residents who are CNA insureds may possess a common question that predominates over individual ones.

Normally, the fact that this court would rule differently on a motion for class certification on the same set of facts presented to the circuit court is not sufficient to warrant reversal. The denial of such a motion is subject to reversal where we find that the circuit either abused its discretion or applied impermissible legal criteria. See Avery, 321 Ill. App. 3d at 279; McCabe, 75 Ill. 2d at 465. Under this standard reversal may be warranted upon a determination that the

circuit court acted arbitrarily without the employment of conscientious judgment, or exceeded the bounds of reason and ignored the recognized principles of law so that substantial prejudice resulted.  In re D.M., 336 Ill. App. 3d 766, 772 (2002).  Where it is evident that the circuit court exercised no discretion in rendering its decision, we owe no deference to discretion that it failed to employ.

In reviewing the circuit court's penultimate orders and the transcripts of the hearings preceding the one that took place on July 8, 2004, it is apparent the circuit court made findings as to counterplaintiffs' requests to certify the first three larger classes, where it stated that the claims involving wider classes of plaintiffs would involve highly individualized issues that would likely predominate over common issues and the classes of defendants beyond CNA would affect the interests of parties who had not been properly joined in the counterclaim.  However, no such justification or consideration of similar criteria appears concerning the circuit court's decision as to the final class of CNA-insureds residing in Illinois.  Indeed, our perusal of the transcript from the July 8, 2004, hearing leads us to believe that the circuit court never applied any legal criteria or reached any finding as to the putative class's propriety, and only disposed of counterplaintiffs' request to certify so as to expedite the appeals process and accommodate the trial judge's approaching departure.

We find that this decision was arbitrary, seeing as it was based merely on circumstance and not on any findings as to the counterplaintiffs' pleadings, and it was plainly apparent that the trial judge did not exercise his discretion in arriving at it.  The convenience of the parties and of the bench is not a permissible legal criterion on which to base the grant or denial of a motion to

certify a class action. Accordingly, we do not find that the class limited to Illinois CNA insureds is an appropriate one, but rather we conclude that reversal is warranted in this instance and that remand of this final matter of the narrower class for a full hearing and for findings on its propriety is appropriate.

For the reasons set forth above, we affirm the circuit court's denial of counterplaintiffs' motion to certify as to the wider classes (all insureds in all states, all insureds in Illinois, all CNA insureds in all states), and we reverse its denial of their motion to certify the narrower class and remand for further proceedings to consider whether certification of this class would be appropriate.

Affirmed in part and reversed in part; cause remanded with instructions.

QUINN, P.J., and CAMPBELL, J., concur.