No. 2--07--1031          Filed: 6-25-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WILFREDO CRUZ, MATTHEW ALLBEE, GUADALUPE VARELA, RAUL TORRES, and KENNETH JOSEPH, Individually and on Behalf of a Class of Similarly Situated Persons, | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 05--CH--259 |
| UNILOCK CHICAGO, INC., | ) ) | Honorable Michael J. Colwell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Wilfredo Cruz, Matthew Allbee, Guadalupe Varela, Raul Torres, and Kenneth Joseph, timely filed a petition for leave to appeal pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), seeking to appeal the order of the circuit court of Kane County denying plaintiffs' motion for class certification. We granted plaintiffs leave to appeal. On appeal, plaintiffs contend that the trial court abused its discretion and relied on improper legal standards in denying their motion for class certification. We reverse and remand the cause with instructions.

The following summary of facts is taken from the allegations of plaintiffs' complaint as well as the evidence compiled and presented by the parties in support of their positions on the class certification. In our factual recitation, we also seek to present the purported factual issues identified

by the parties. Plaintiffs are five current and former employees in the Aurora manufacturing plant of defendant, Unilock Chicago, Inc. Cruz worked for defendant from May 2002 to March 2004. During his employment, Cruz performed assembly line work in the tumbler department, and, at some point, Cruz became a line supervisor with certain clerical responsibilities. Allbee was employed by defendant from June 2000 to September 2004 in the maintenance department, repairing and servicing defendant's equipment. Varela worked for defendant from May 1995 to September 2004 in the quality control department and as a tumbler, strapper, and loader driver. Torres is currently employed by defendant, having begun his employment in 1997. Torres has worked in quality control, in maintenance, and in the yard as a machine operator and as a strapper. Joseph was employed by defendant from April 2002 to September 2005 in defendant's maintenance department. Plaintiffs seek to represent a class of former and current hourly wage employees who have worked for defendant in production and maintenance positions since June 1999. Plaintiffs assert that the proposed class consists predominantly of Spanish-speaking persons of Mexican descent who speak English as a second language, many of whom have a limited ability to read and write both Spanish and English. Plaintiffs further assert that the proposed class is geographically dispersed because many of its members have relocated to Mexico or to other states in the United States.

Defendant is an Aurora-based manufacturer of decorative paving stones used in, e.g., driveways, patios, and retaining walls. The paving stones are not actually stones but are fabricated from concrete into various shapes, sizes, colors, and textures. Defendant's facility operates all year, but its busiest time coincides with construction season--March through the middle of November. During its peak operations, defendant employs about 100 hourly production and maintenance workers. Defendant lays off most of the production employees in November, at the end of the peak

season. Defendant usually rehires most of the laid-off production employees in the following March, when the peak season begins again.

During its peak season, defendant's facility operates 24 hours a day, 6 days a week, in 2 shifts: predominantly a 6 a.m. to 6 p.m. shift, and a 6 p.m. to 6 a.m. shift. Some employees work on a different schedule but maintain the 12-hour shift structure. Employees are given a one-half hour lunch period during the day, so they receive wages for an 11.5-hour work day.

Plaintiffs assert that, before this suit was filed, defendant had a rule and a uniform practice that employees were required to be at their work areas 10 to 15 minutes before the start of their shift. Plaintiffs allege that this was to allow the workers from the previous shift to brief the workers from the next shift about any events that had occurred during the previous shift. Plaintiffs also assert that employees were required to wear uniforms at their work stations and that they typically would arrive 15 to 30 minutes before the scheduled start of the shift to change into their uniforms and still make it to the work area 10 to 15 minutes before the scheduled start of the shift. According to plaintiffs, this preshift time was recorded by defendant but it was not counted as compensable time.

Defendant purports to controvert plaintiffs' assertions. Defendant asserts that there was no rule or practice that employees were expected to arrive at their work areas before the scheduled beginning of the shift. Defendant also asserts that there was no mandatory briefing of the next shift by the previous shift. Instead, defendant asserts that employees, of their own volition and in order to begin their shifts on time, would typically arrive at the facility anywhere from 10 to 30 minutes before the start of their shift. Employees would punch in, talk, eat, drink coffee, read the newspaper, and otherwise wait for the beginning of their shift. They did not perform any work before the beginning of the shift even though they had already punched in. Defendant asserts that employees

knew that they could punch in whenever they wished because they understood that they worked only their scheduled times. Defendant implemented grace periods for punching in to account for the early punches, but not all of the employees were subject to the grace periods.

Defendant also asserts that its policy regarding uniforms was different from what plaintiffs portrayed it to be. Defendant states that it did not require each employee to wear a uniform but that any employee was allowed to wear a uniform if he chose to do so. Defendant also disputes that employees had a consistent practice of changing into uniforms--defendant claims that some employees changed into their uniforms at home and wore them to work and some wore the uniforms home at the end of the day. Defendant also asserts that many employees changed into their uniforms on the clock. Defendant illustrates this point with excerpts from the depositions of plaintiffs Allbee, Varela, and Torres. Defendant points to Allbee's deposition testimony that he, along with "most maintenance guys," "had a set of uniforms." According to Allbee, the maintenance workers "always wore a different change of clothes, but it was never the uniform." Varela and Torres testified in their depositions that they changed out of their uniforms on the clock at the end of the day.

Plaintiffs assert that the end-of-shift requirements were a mirror image of the preshift requirements. According to plaintiffs, employees were not permitted to leave their work areas until they were relieved by the next shift. They were required to clean up the work area and participate in briefing the next shift. After this was accomplished, they were allowed to wash up and change out of their dusty and dirty uniforms. Occasionally, according to plaintiffs, employees would stay late at their work areas, working, but any time recorded after the scheduled end of the shift was not counted as compensable time.

Defendant, by contrast, asserts that employees were paid for any after-shift work. Further, according to defendant, employees finished working at the scheduled end of the shift and, in many instances, stopped working a few minutes before the scheduled end of the shift. Defendant also asserts that employees were not required to wait for the next shift's employees to relieve them.

Defendant also notes that employees were given cleanup duties for their work areas, but the cleaning work was completed well before the scheduled end of the shift. Defendant asserts that cleaning up the concrete and other materials used in its manufacturing process took a considerable amount of time. Defendant asserts that the cleanup work was performed on the clock and that employees were paid for all of the cleanup time. Cleanup, according to defendant, typically started about two hours before the end of the shift. After the cleaning was finished, employees could wash (and change their clothes, if they desired) and then they restarted the machines for the next shift.

According to plaintiffs, employees regularly were required to cut short their lunchtimes or to work through their lunchtimes. Employees were not paid for their lunch breaks. According to plaintiffs, defendant had programmed its timekeeping system to deduct automatically 30 minutes from each employee's daily time to reflect a lunch break. Plaintiffs assert that an employee who worked during his lunchtime was not paid for that time.

Defendant agrees that the 30-minute lunch period was uncompensated. However, defendant asserts that all employees were provided with their full 30-minute lunch breaks. Defendant denies that there was a practice of requiring employees to work during all or part of their lunch breaks. Defendant asserts that, if an employee took a short lunch and began working again, he was paid for the extra time. Defendant also asserts that the time records did not always reflect the actual lunch period taken by an employee, as many employees would punch back into the timekeeping system

in the middle of their lunch breaks so that they would not forget to do so when their lunch breaks ended. Defendant also asserts that, likewise, many employees would forget to punch in or out for lunch.

Plaintiffs assert that defendant maintained a single timekeeping and payroll system for all of its hourly production and maintenance employees. All employees were subject to the same policies and rules. According to plaintiffs, none of the plant employees had very much knowledge about the time records and most of them had never seen their time records. During the time period covered by plaintiffs' allegations, plant employees were required to punch in and out accurately, including during the lunch period. Plaintiffs concede that the time records kept before this action was filed were generally accurate regarding the compensable time worked by plant employees. Defendant does not specifically controvert plaintiffs' assertions.

Plaintiffs assert that defendant programmed and designed the timekeeping system. According to plaintiffs, the system has a "preshift default" that automatically disregards and deducts up to 30 minutes of recorded time before the scheduled start of the shift, a "postshift default" that automatically disregards and deducts up to 15 minutes of recorded time after the scheduled end of the shift, and a "lunch default" that automatically deducts 30 minutes for lunch regardless of whether employees actually worked during their lunch breaks. The defaults applied to almost every pre-2005 employee. Plaintiffs assert that the defaults were created in order to "force [the] employee's [sic] to fit within the 11.5 hours [daily] budget." Defendant did not specifically provide any factual statements or evidence to controvert plaintiffs' assertions.

Plaintiffs assert that, in addition to the automatic defaults programmed into the timekeeping system, defendant manually edited the time records. Plaintiffs assert that manual editing would be

used when an employee punched into the system earlier than 30 minutes before the scheduled start time. Plaintiffs assert that defendant had a practice and pattern of manually editing the proposed class's time records and that this editing applied equally to almost all pre-2005 employees. According to plaintiffs, the plant manager would have the time records printed out every week in order to make edits to the time records. Plaintiffs estimate that the plant manager would make between 50 to 55 edits for each pay period by crossing out time recorded for employees on the printout. An administrative assistant would change the time records in the computerized timekeeping system. After the changes were made to employees' time records, the (now edited) records would be sent to defendant's payroll service provider, who would then pay the employees based on the edited time records. Plaintiffs assert that defendant's editing affected all plant employees, no matter the department or the pay classification.

Defendant disputes plaintiffs' assertions, justifying the necessity of editing the time records to adjust for the laxity of its timekeeping practices and the irregularity of employees' practices. According to defendant, it edited the time records in order to make them accurately reflect the time that employees actually worked. Defendant asserts that the edits added missing punches or deleted extra punches. Edits both added and took away compensable time. Defendant asserts that its review of "all of the edits over the years relevant to this case established that, as a whole, the edits involving time adjustments actually <u>increased</u> the time worked, and that [defendant's] employees were not actually shorted any pay." (Emphasis in original.)

Plaintiffs assert that, following the instigation of this case, defendant implemented a new timekeeping policy, effective June 24, 2004. According to plaintiffs, plant employees are required to punch in and out within seven minutes of the beginning and the end of their shifts (the seven-

minute rule), and defendant no longer automatically deducts 30 minutes for their lunch breaks. Plaintiffs assert that, when defendant first implemented the seven-minute rule, it instructed employees not to punch in more than seven minutes before the beginning of the shift and not to punch out more than seven minutes after the end of the shift. According to plaintiffs, defendant modified the timekeeping system to prevent it from recording time more than seven minutes before a shift begins and more than seven minutes after a shift ends. Plaintiffs conclude that the seven-minute rule "results in a rounding practice that almost always inures to the benefit of the employer." Defendant did not provide any factual recitation or evidence that specifically responded to plaintiffs' allegations.

Plaintiffs further assert that, since the implementation of the seven-minute rule, employees' work routines remain the same. According to plaintiffs, any pre- or postshift work, including donning and doffing uniforms and washing up, is done off the clock, either before punching in at the start of the shift or after punching out at the end of the shift. Plaintiffs further assert that it is now defendant's explicit policy not to pay employees for donning or doffing their uniforms or work clothes. Defendant does not specifically reply to these assertions.

Plaintiffs instituted this action in order to recover wages allegedly not paid for time worked and to recover overtime wages allegedly not paid for work in excess of 40 hours a week. Plaintiffs alleged that these claims cover time periods from June 1999 through the present day. Plaintiffs alleged that defendant's conduct violated the Illinois Wage Payment and Collection Act (820 ILCS 115/1 et seq. (West 2004)) and the Minimum Wage Law (820 ILCS 105/1 et seq. (West 2004)). Plaintiffs also moved to certify a plaintiff class consisting of all current and former employees of

defendant who were paid hourly. Plaintiffs contended that the class contained more than 300 persons.

The parties submitted evidence and argument on the motion to certify the class. The trial court denied plaintiffs' motion for certification. It considered the evidence submitted by both parties and determined that plaintiffs had failed to demonstrate any of the elements of numerosity, common questions of fact or law, predominance of common questions, adequacy of representation, or appropriateness of a class action to fairly and efficiently adjudicate the controversy. Considering the numerosity requirement, the trial court ruled that plaintiffs had established that no more than 10 employees had claimed to have been harmed by defendant's compensation and timekeeping policies. Specifically, the trial court determined that, while defendant required employees to be present 10 to15 minutes before the start of their shift, it also allowed them to leave 10 to15 minutes before the end of their shift. The trial court also found that many employees believed that they were paid correctly for the hours they worked. Further, considering an expert witness's report, the court concluded that the manual edits of time records increased employees' compensable time and that employees were not actually shorted any pay. The trial court further determined that plaintiffs' allegations concerning the geographical distribution of the proposed class, the knowledge and sophistication of the proposed class members, the amounts of the claims of the individual class members, and the nature of the cause of action were not germane, because plaintiffs had not demonstrated the existence of a class size of between 25 and 40 members but, instead, had demonstrated that not even as many as 10 employees had been harmed. The trial court concluded that plaintiffs' proposed class did not satisfy the numerosity prerequisite.

The trial court also held that common questions of fact or law did not predominate over questions affecting the individual class members. The trial court determined that defendant's time records would show only that an employee's time was edited and would not show that the time had been properly or improperly edited. Further, the trial court held that plaintiffs had not established the existence of a company-wide policy concerning wearing uniforms or working through lunch. It concluded that the successful adjudication of plaintiffs' claims would not establish a right of recovery for the unnamed members of the class and that the level of individualized proof to determine whether an individual employee was harmed at all would overwhelm any possible common issues of fact or law. Accordingly, the trial court held that commonality and predominance were lacking.

The trial court also held that adequacy of representation was lacking. One of the named plaintiffs, Cruz, held a supervisory position. The trial court noted that supervisors may be inappropriate as named plaintiffs because of conflicts between them and hourly employees and because supervisors may be the cause of class members' complaints. The trial court noted that there was evidence that supervisors would roust hourly employees and force them to their work areas 10 to 15 minutes before the scheduled start of their shift. The trial court held that, because of this potential conflict of interest between supervisors and hourly employees, the named plaintiffs were inadequate to represent the interests of the class. Further, the trial court held that, because plaintiffs had failed to show numerosity and commonality and predominance of common questions of fact or law, a class action would be an inappropriate means by which to resolve the issues in this action. Accordingly, the trial court denied plaintiffs' motion to certify the class.

Plaintiffs filed a timely motion for leave to appeal pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)). We granted the motion and now consider plaintiffs' contentions on appeal.

On appeal, plaintiffs contend that the trial court abused its discretion or applied impermissible legal criteria in denying the motion for class certification. Plaintiffs assert that the trial court improperly made findings of fact and improperly assessed the credibility of witnesses regarding disputed facts, making rulings that determined the merits of plaintiffs' claims. Plaintiffs also contend that the trial court's determination on each of the class prerequisites (numerosity, commonality, adequacy of representation, and appropriateness of a class action) was erroneous. Plaintiffs also argue that the trial court erred by failing to address or rule upon plaintiffs' post-seven-minute-rule claims.

As an initial matter, we consider the standard of our review, noting that the parties sharply disagree on the role of the trial court in passing upon a motion for class certification. Plaintiffs, relying upon some Illinois authority, argue that the trial court must take their allegations as true. Defendant, relying upon federal authority, argues that the trial court may conduct limited inquiries into the factual record pertaining to class certification.

The parties agree about the basic framework governing class certification. Section 2--801 of the Code of Civil Procedure (Code) sets forth the requirements necessary to maintain a class action:

"An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

-11-

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."  735 ILCS 5/2--801 (West 2006).

Section 2--801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provisions, "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois."  Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 125 (2005).  The proponent of the class action bears the burden to establish all four of the prerequisites set forth in section 2--801.  Avery, 216 Ill. 2d at 125.

The decision regarding class certification is within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria.  Smith v. Illinois Central R.R. Co., 223 Ill. 2d 441, 447 (2006).  The trial court's discretion regarding the certification of a class is not without limits; the trial court's discretion is bounded by and must be exercised within the framework of the rules of civil procedure governing class actions.  Smith, 223 Ill. 2d at 447.

The scope of appellate review is limited.  Health Cost Controls v. Sevilla, 365 Ill. App. 3d 795, 805 (2006).  The appellate court is limited to an assessment of the trial court's exercise of discretion; the appellate court cannot indulge in an independent, de novo evaluation of the facts alleged and the facts of record to justify class certification.  Health Cost Controls, 365 Ill. App. 3d

at 805. In reviewing the trial court's decision on the question of class certification, the appellate court "is only to assess the discretion exercised by the trial court and may not instead assess the facts of the case and conclude for itself that a case is well-suited for a class action." Health Cost Controls, 365 Ill. App. 3d at 805. Where, for example, the trial court has denied class certification, in order to reverse, the appellate court would have "to find that no other reasonable conclusion could be reached but that a class action would be appropriate." Health Cost Controls, 365 Ill. App. 3d at 805.

The parties are divided regarding the scope of the trial court's inquiry. While plaintiffs note that the trial court is to conduct a rigorous analysis of the certification issue, plaintiffs rely upon Clark v. TAP Pharmaceutical Products, Inc., 343 Ill. App. 3d 538, 545 (2003), citing Johns v. DeLeonardis, 145 F.R.D. 480, 482 (N.D. Ill. 1992), which states that the trial court is to accept the allegations of the complaint as true. The appellate court in Clark did not explain why, in order "[t]o determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." Clark, 343 Ill. App. 3d at 544-45. The court's factual recitation does not entirely clarify the procedural posture of the case; however, the court references evidence taken from depositions and affidavits and not solely from allegations in the plaintiff's complaint in setting forth the facts of the case. Clark, 343 Ill. App. 3d at 542-43. Thus, Clark appears not to actually follow its own statement that the allegations of the complaint be taken as true.

Defendant contends that the trial court must be allowed to conduct a factual inquiry into the propriety of class certification based on the evidence contained in the record at the time certification is sought. In support of its contention, defendant cites Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir. 2001). Szabo explained:

"The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it. The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its _factual_ sufficiency will be tested later--by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." (Emphasis in original.) Szabo, 249 F.3d at 675-76.

Szabo further discussed the scope of the factual inquiry:

"Questions such as these require the exercise of judgment and the application of sound discretion; they differ in kind from legal rulings under Rule 12(b)(6). And if some of the considerations under Rule 23(b)(3), such as 'the difficulties likely to be encountered in the management of a class action', overlap the merits--as they do in this case, where it is not possible to evaluate impending difficulties without making a choice of law, and not possible to make a sound choice of law without deciding whether Bridgeport authorized or ratified the dealers' representations--then the judge must make a preliminary inquiry into the merits." Szabo, 249 F.3d at 676.

Szabo concluded its comments on factual inquiries, noting that, "[w]hen jurisdiction or venue depends on contested facts--even facts closely linked to the merits of the claim--the district judge

-14-

is free to hold a hearing and resolve the dispute before allowing the case to proceed." Szabo, 249 F.3d at 676-77.

In considering the issue of whether the trial court may conduct a factual inquiry, we discovered cases supporting each party's position. For example, Ramirez v. Midway Moving & Storage, Inc., 378 Ill. App. 3d 51, 53 (2007), quoting Clark, 343 Ill. App. 3d at 544-45, stated that, " '[t]o determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true.' " Like Clark, however, Ramirez offered no further analysis of why the trial court should do this. In its discussion of commonality and predominance, Ramirez offered the following:

> " 'Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class. [Citation.] Such an inquiry requires the court to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law.' " Ramirez, 378 Ill. App. 3d at 54-55, quoting Smith, 223 Ill. 2d at 449.

This recitation of the law surrounding the commonality and predominance element of class certification would seem to call for a more searching inquiry and, potentially, some sort of factual determination. Ramirez, then, is not entirely clear and consistent in its suggestion that the allegations of the complaint be accepted as true in resolving a motion for class certification.

On the other hand, in Enzenbacher v. Browning-Ferris Industries of Illinois, Inc., 332 Ill. App. 3d 1079, 1084 (2002), this court explained:

"The appropriate way to determine whether to certify a class is by a motion for class certification. At the time such a motion is presented for hearing, the trial court may consider any matters of law or fact properly presented by the record, including pleadings, depositions, affidavits, answers to interrogatories, and any evidence adduced at hearing on the motion."

Likewise, in Brown v. Murphy, 278 Ill. App. 3d 981, 989 (1996), quoting Gordon v. Boden, 224 Ill. App. 3d 195, 199 (1991), the court stated that, in deciding whether to certify a class, the court may consider " 'any matters of fact or law properly presented by the record, including the pleadings, depositions, affidavits, answers to interrogatories and any evidence that may have been adduced at hearings.' " These cases too, however, offer little in the way of explanation as to why the court should do this. Additionally, we note that the Clark-Ramirez line of cases appears to exist separately from the Enzenbacher line of cases and that neither line appears to acknowledge, let alone question, any elements of the statements of law in the other. Thus, neither line provides a particularly forceful rationale for its adoption. On the other hand, Clark's statement of the law seems unduly cursory, while Szabo takes the time to explain why the trial court cannot unreflectingly accept the allegations of the complaint as true.

Having considered the arguments and authorities presented by the parties, as well as our own research, we believe that Szabo provides a sound and cogent explanation of why the trial court is to look beyond the allegations of the complaint when a party seeks class certification. Enzenbacher, 332 Ill. App. 3d at 1084, appears to imply that it has adopted this idea even if it is silent as to why. Given the reasoned and thoughtful explanation in Szabo versus the cursory and unexplained statement in Clark, we choose to follow the guidance suggested by Szabo. Accordingly, we hold that the trial court may conduct any factual inquiry necessary to resolve the issue of class certification

presented by the record. However, we emphasize that the trial court's discretion is limited to an inquiry " 'into whether [the] plaintiff is asserting a claim which, assuming its merits, will satisfy the requirements of [section 2--801] as distinguished from an inquiry into the merits of [the] plaintiff's particular individual claims.' " Szabo, 249 F.3d at 677, quoting Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir. 1981). Thus, the trial court is not to determine the merits of the complaint, but only the propriety of class certification, and its factual inquiry and resolution of factual issues is to be limited solely to that determination.

Stating the rule, however, is only the first step; we must implement the rule, too. While the parties have cited no authority illustrating how the factual inquiry surrounding class certification is to be conducted, certain of the federal circuit courts of appeal have provided us with guidance. For example, Szabo is exceedingly clear that a trial court need not accept a plaintiff's assertion that the class size is 10,000 where the evidence shows it to be only 10. Szabo, 249 F.3d at 676. It is the trial court's proper role to resolve such a dispute. Likewise, in In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6 (1st Cir. 2008), the court acknowledged that "weighing whether to certify a plaintiff class may inevitably overlap with some critical assessment regarding the merits of the case," but it justified this overlap by reasoning that "[i]t would be contrary to the 'rigorous analysis of the prerequisites established by [section 2--801] before certifying a class' to put blinders on as to an issue simply because it implicates the merits of the case." Canadian Export, 522 F.3d at 17, quoting Smilow v. Southwestern Bell Mobile System, Inc., 323 F.3d 32, 38 (1st Cir. 2003). The court cautioned, however, that, while the trial court is required to make findings regarding the class certification issue, the

"use of the term 'findings' in this context should not be confused with binding findings on the merits. The judge's consideration of merits issues at the class certification stage pertains only to that stage; the ultimate factfinder, whether judge or jury, must still reach its own determination on these issues." Canadian Export, 522 F.3d at 24.

We also note the danger of allowing a defendant to assist in determining class certification, because it is "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." Eggleston, 657 F.2d at 895. Following these guidelines, we will therefore carefully consider whether the trial court's determinations were limited to the issue of class certification or whether they impermissibly strayed into resolving the merits of plaintiffs' claims against defendant.

We turn to plaintiffs' contentions on appeal. Plaintiffs first contend that the trial court improperly decided the merits of certain factual issues. This contention, however, essentially coincides with plaintiffs' specific contention that the trial court ruled improperly regarding numerosity. Thus, rather than split our discussion into parts, we will address plaintiffs' general contentions regarding fact finding (which are all related to numerosity issues) together with plaintiffs' specific contention regarding the trial court's ruling on numerosity.

Accordingly, we turn first to plaintiffs' general contentions about impermissible fact finding. Plaintiffs initially challenge the numerosity determination with instances of general and impermissible fact finding on the part of the trial court. Plaintiffs contend that the trial court conclusively determined that employees were required to be at their work stations 10 to 15 minutes before their scheduled starting times. According to plaintiffs, the trial court also determined that employees who were at their stations early all left their stations a similar number of minutes early. Plaintiffs further contend that the trial court improperly credited defendant's expert witness's

conclusion that "employees as a whole were not shorted pay," and improperly concluded that the plant manager checked with the supervisors to determine whether each employee had actually worked the time appearing in the time records. Plaintiffs argue that these issues were properly the province of the  finder of fact at trial and should not have been decided at the class certification stage. We agree.

We begin by analyzing the trial court's ruling on numerosity in light of plaintiffs' general fact-finding contentions. The trial court began its consideration of numerosity by first noting each party's position--plaintiffs asserted that the proposed class contained at least 200 to 300 members; defendant asserted that it was much smaller. The trial court then reviewed the evidence submitted regarding the composition of the class. The trial court noted, in that context, that the "early arrival policy" was "apparently accompanied by an 'early out policy' " and recounted deposition testimony and pleadings that supported the existence of an "early out policy." The issue with the early-out policy, however, is whether the class members affected by it were through working at the point they left their stations, or whether they still performed work functions by washing up, or changing their uniforms. The trial court also accepted as conclusive defendant's evidence on the existence of an early-out policy. In our view, then, the trial court erred in assessing pretrial the effect of the early-out policy, as it bears directly on the issue of whether the proposed class was not fully paid for its time.

Also, in attempting to ascertain the size of the proposed class, the trial court noted that a number of employees' affidavits submitted on the motion for class certification indicated that they believed that they had been paid correctly for the time they worked. The trial court concluded that, rather than a class size of 200 to 300, the evidence supported a class size of no more than 10 employees expressly claiming to have been harmed by defendant's policies. The trial court

confirmed this conclusion by referring to the report of defendant's expert witness, which concluded that there was no sound statistical evidence contained in the time records to support the allegation that defendant's employees were required to work off the clock or were shorted compensable time. This too, intrudes upon ultimate questions. The trial court viewed the approximately 30 affidavits defendant submitted, indicating that the affiants believed themselves to have been fully compensated, as meaning that the rest of the 160 to 260 or so class members who had not been asked to submit any evidence must also have believed themselves to have been fully compensated. Likewise, the expert's conclusion that the employees, as a whole, had not been shorted time, begs the question whether plaintiffs and any other individual class members were shorted time and compensation. The issue to be resolved here is not whether defendant's employees in general had been fully compensated, but whether a sufficient number had not, making their joinder in the action impracticable. Nevertheless, we recognize that it is plaintiffs' burden to demonstrate the existence of the elements necessary for class certification. It is the trial court's burden to resolve factual issues pertaining to those elements. We hold that, in some of its factual determinations, the trial court crossed the line into the ultimate issues of plaintiffs' complaint.

The conclusion regarding the purpose of the edits to the time cards is also an intrusion into the ultimate merits. At this point, the issue is not why they changed, but, rather, were they changed. The parties can then explain why at trial. Further, if plaintiffs demonstrate that everyone was subject to editing, then they would appear to have made a reasonable case that the class is sufficiently numerous. The trial court erred in resolving the why of this issue rather than determining whether there existed a policy to edit time.

Next, we consider plaintiffs' specific contentions concerning numerosity. Plaintiffs contend that the trial court either applied impermissible legal standards or abused its discretion by ignoring critical evidence regarding each of the four elements necessary to support class certification and identified in section 2--801. With respect to numerosity, plaintiffs argue that the trial court erroneously determined that the proposed class was insufficiently numerous to support a class action and to make joinder impracticable.

Plaintiffs specifically challenge the trial court's determination in four respects. First, plaintiffs argue that the trial court erroneously required that each class member must believe or be aware of his injury in order to be included in the proposed class. Second, plaintiffs contend that the trial court erroneously concluded that the early-out policy acted as an offset to the early-in policy, thereby relieving defendant of liability for the early-in policy. Third, plaintiffs contend that the trial court erred in crediting the report of defendant's expert witness and in using it to determine that members of the proposed class had not been underpaid. Last, plaintiffs contend that the trial court did not consider all the evidence in the record in rendering its decision regarding numerosity.

We do not precisely address each of the specific points raised by plaintiffs, because we believe a few examples will demonstrate the errors in the trial court's analysis. For the first example, we note that plaintiffs submit time sheet evidence, their exhibit T from their motion for class certification, to demonstrate that upwards of 90 employees were denied correct overtime pay. Defendant does not expressly controvert exhibit T. Instead, defendant, conclusorily, argues that plaintiffs manipulated the time sheets to reach their conclusion concerning the underpayment of overtime wages. If the trial court were to resolve this dispute, then defendant would have to demonstrate how plaintiffs manipulated the data or offer a competing exhibit that expressly

demonstrates the error of plaintiffs' claims. Tellingly, defendant does not do this. In its appellate response brief, defendant does not cite to any submission it made that might controvert either plaintiffs' contention or their conclusion stemming from their exhibit T. Contrary to defendant's argument, we believe that the existence of 80 to 90 employees who have been denied full overtime wages in one pay period certainly supports a finding of numerosity. Further, both sides in this appeal appear to be comfortable with the idea that one general example suggests that others may exist too. Based on the fact that 80 to 90 persons can be identified as having been denied their full compensation in one pay period, it would not be unreasonable to believe that others in other pay periods may also exist. Defendant points to nothing in the record to refute this reasoning. The trial court should, therefore, have determined that plaintiffs satisfied the numerosity requirement, and its failure to do so amounts to an abuse of discretion.

Our next example is the approximately 30 affidavits defendant submitted to oppose class certification. The trial court drew from them the conclusion that the approximately 30 affiants represented that they had been fully compensated, because they checked their pay stubs and the amounts they had been paid were accurate according to the number of hours they purportedly worked as reflected on the pay stubs. This, however, begs the question of whether the time reflected on the pay stubs was accurate. At most, it suggests that the affiants believed they worked 11.5 hours every day and were paid accordingly. It does not answer the question of whether the time was properly recorded and attributed to each affiant. Thus, each affiant's belief that he had been fully compensated does not really help to determine if defendant's timekeeping policies inured to the benefit or detriment of its employees. The trial court erroneously accepted the affidavits as serving to undermine plaintiffs' allegations of numerosity. Additionally, based on the roughly 30 defendant-

submitted affidavits, the trial court improperly concluded that those employees had not been harmed by its timekeeping policies. The most the trial court was entitled to conclude was that the affiants were unaware of the effect of the policies. Evidence in the record establishes that few employees had access to or understood the weekly time cards. The affiants' belief that they had been fully paid does not answer the question of whether all of their time had been counted.

Additionally, we are troubled that the trial court would accept only express statements of harm as sufficient to qualify an employee for class membership. If, as is supported by the record, employees did not review their time cards, then they cannot know if they were credited for all of the hours worked. Verifying their pay based on the hours reflected on their pay stubs is a mechanical calculation, but it does not shed any light on the ultimate question of whether all of the compensable time was included on each employee's pay stub. The trial court erred in concluding that the defendant-submitted affidavits foreclosed plaintiffs' certification attempt.

Another example is the trial court's determination of the effect of the "apparent" early-out policy. The trial court first determined that the evidence established the existence of an early-in policy for the production and maintenance employees. This would appear to support a finding of numerosity. Then, based on three depositions (one was of defendant's former plant manager), the trial court concluded that defendant had a reciprocal early-out policy that canceled any and all harm attributable to the early-in policy. We find that this is a conclusion on the ultimate merits of the case and thus impermissible. The effect of the early-in and early-out policies is precisely what plaintiffs are attempting to litigate through the vehicle of a class action suit. For the trial court to conclude that the early-out policy nullifies all harm from the early-in policy improperly usurps the role of the trier of fact. Further, in concluding that the early-out policy balances the early-in policy, the trial court

has effectively determined that it is an offset nullifying one of plaintiffs' claims. Yet, there are unanswered questions surrounding the early-out policy, such as, did employees continue to work or otherwise perform activities necessary and integral to their employment for which they should continue to be compensated? Just because any employee may have been able to leave his station early does not mean that he could not be paid for cleaning up and changing his uniform. The trial court erred in reaching a factual conclusion on this issue. These examples, then, demonstrate the trial court's error in concluding that plaintiffs did not sufficiently demonstrate the numerosity requirement.

We turn to defendant's arguments in support of the trial court's rulings, beginning with defendant's responses to plaintiffs' specific arguments regarding numerosity, followed by its responses to plaintiffs' general fact-finding issues. Defendant maintains that the trial court correctly determined that plaintiffs' proposed class definition was conclusory and overbroad. Defendant points particularly to the fact that plaintiffs have suggested no way to identify those employees who were in fact shorted time and pay. Defendant urges that, as a result, this case is analytically identical to Petty v. Wal-Mart Stores, Inc., 148 Ohio App. 3d 348, 773 N.E.2d 576 (2002), and Jackson v. Wal-Mart Stores, Inc., No. 258498 (Mich. App. November 29, 2005). In Petty, the plaintiff defined the proposed class as all past and present employees of the defendant. According to the plaintiff, this amounted to around 174,000 persons. The trial court denied the class certification because the evidence showed that not all of the proposed class members had suffered the harm of working off the clock. Petty, 148 Ohio App. 3d at 354, 773 N.E.2d at 580. The appellate court agreed, finding that the huge size of the class divorced it from any connection with the alleged harm, rendering the proposed class members unidentifiable. Petty, 148 Ohio App. 3d at 355, 773 N.E.2d at 581.

Likewise, in Jackson, the plaintiff attempted to define the class of persons required to work off the clock as all current and former hourly employees, totaling some 96,000 persons. The plaintiff offered no allegations or evidence regarding the number of persons who actually experienced the harm of working off the clock, and the trial court could not ascertain whether the numerosity requirement had been met. Jackson, slip. op at ___.

Defendant asserts that plaintiffs' allegations here sufficiently parallel those in Petty and Jackson to warrant following the rationales in those cases. Defendant argues that, because plaintiffs have not provided a means to identify those class members who experienced the harm complained of, namely, working uncompensated for periods of time, plaintiffs cannot satisfy the numerosity requirement. We disagree.

Plaintiffs' evidence in this case distinguishes it from both Petty and Jackson. Here, plaintiffs have presented evidence, which the trial court accepted, of an early-in policy affecting all members of the class. At least at this point in the proceedings, this raises the likelihood that all members were required to work off the clock. The trial court's conclusion that the early-in policy was balanced or offset by an early-out policy is unwarranted as an impermissible intrusion upon the merits of plaintiffs' claims, and is inappropriate for purposes of determining class certification. In addition, plaintiffs specifically point to a pay period in which 80 to 90 workers were shorted overtime compensation. Defendant does not specifically controvert this evidence; rather, defendant conclusorily asserts only that plaintiffs somehow manipulated the time records. While this evidence covers a smaller portion of the proposed class and a much smaller period of time than the proposed class period, it is illustrative of the existence of a sufficient number of individuals who have been harmed by defendant's conduct and policies. See Marcial v. Coronet Insurance Co., 880 F.2d 954,

957 (7th Cir. 1989) (noting that numerosity issues may be resolved later on in a suit, after initial class certification). Likewise, even though plaintiffs define the proposed class as all current and former production and maintenance employees, it is narrowly targeted to only one of defendant's facilities, and the number of persons eligible is relatively small--200 or 300. Thus, Petty and Jackson are factually distinct and provide little guidance in the circumstances plaintiffs have presented here. Accordingly, plaintiffs have presented sufficient evidence at this stage in the proceedings to satisfy their burden of showing the numerosity of the class. We reject defendant's argument.

Defendant also assails plaintiffs' evidentiary submission in support of their motion for class certification. However, from this submission, the trial court was able to determine the existence of an early-in policy on defendant's part. Likewise, the trial court found that the evidence established that employees' time was edited, even if the court did not believe that plaintiffs established a motivation for the edits. Plaintiffs' submission also established the existence of a time-rounding algorithm employed by defendant. We believe, then, that the evidence plaintiffs submitted is sufficient to demonstrate that plaintiffs have met their numerosity requirement.

Defendant also highlights the trial court's determination that "the class size is overbroad and conclusory. Plaintiffs have offered no detailed information on the number of persons in the class, nor a method by which the court may ascertain the number of persons in the class." Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice (Arenson v. Whitehall Convalescent & Nursing Home, Inc., 164 F.R.D. 659, 662 (N.D. Ill. 1996)); rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable (Ramirez, 378 Ill. App. 3d at 54). Our analysis above confirms that plaintiffs have offered sufficient evidence and a good-

faith estimate of the class size approaching 200 individuals. While we do not disagree with the trial court's implicit conclusion that plaintiffs' class definition may be problematic, plaintiffs have, nevertheless, presented sufficient evidence to carry their burden of showing that they have met the numerosity requirement. We reject defendant's contention.

Defendant argues that its affidavits indicate that there is no company-wide policy to require employees to work off the clock. That conclusion, however, is effectively on the ultimate merits of the complaint--plaintiffs contend that there is such a policy and defendant contends that there is no such policy. This issue is squarely for the merits at trial, and the trial court erred by reaching it at the class certification stage. We reject defendant's contention.

Defendant makes a similar point regarding the editing of time records. Again, we believe that this is a question pertaining to the ultimate merits. Plaintiffs have identified widespread editing to which all or virtually all of the proposed class members were subject. The effect of the editing, however, needs to be proved in order for plaintiffs to prevail on their complaint. The trial court erred in holding that there was no evidence to indicate that the edits were made to deprive employees of their earned wages, because that is a question of the merits. Rather, the trial court should have stopped once it ascertained that plaintiffs demonstrated that all or nearly all of the class members were subjected to having their time edited. Plaintiffs also demonstrated that in a number of cases the edits decreased the time compensated. This alone establishes sufficient numerosity of the proposed class. Defendant's evidence that the edits, considered as a whole, actually increased the time compensated is evidence directed at the merits of the complaint and not at the numerosity of the class. The trial court erroneously considered it at the class certification stage. We reject defendant's contention.

Defendant contends that the trial court was correct to consider its expert's report in deciding the motion for class certification. According to defendant, the expert reported that plaintiffs' conception of the evidence so far adduced in discovery was flawed, that the time records did not support plaintiffs' contentions, and that the time records did not support the conclusion that defendant had shorted its employees any time or pay lawfully due to them. While we agree that the trial court could consider the report of defendant's expert (see Kitzes v. Home Depot U.S.A., Inc., 374 Ill. App. 3d 1053, 1060 (2007) (considering submissions from the defendant's experts in deciding a motion for class certification)), here the report was directed at the success of plaintiffs' claims and not the propriety of class certification, particularly numerosity. Defendant's argument is misplaced.

Summing up our discussion regarding numerosity, we have identified several areas in which the trial court overstepped its bounds and improperly intruded on the ultimate issues of plaintiffs' complaint. Defendant's contentions show a similar bent toward the merits of plaintiffs' complaint as opposed to controverting and rebutting the allegations that would establish numerosity. As a result, we believe that the trial court relied upon impermissible criteria in determining that plaintiffs failed to satisfy the numerosity requirement. Our consideration of the record demonstrates that plaintiffs adequately established the requisite evidence to show that joinder of all members of the class would be impracticable.

We next consider the commonality and predominance prerequisites for class certification. See 735 ILCS 5/2--801(2) (West 2006). Section 2--801(2) sets forth the requirement that there must be questions of fact or law that are common to the class and that predominate over any questions affecting only individual members of the class. 735 ILCS 5/2--810(2) (West 2006). "The purpose

of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation, and it is a far more demanding requirement than the commonality requirement." Smith, 223 Ill. 2d at 448. Predominance is shown not by whether common issues outnumber individual issues, but by whether common issues or individual issues will be the focus of most of the efforts of the parties and the court. Smith, 223 Ill. 2d at 448-49. In order to determine whether common issues predominate over individual issues, the court is required to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class. Smith, 223 Ill. 2d at 449. In order to satisfy the predominance requirement, the proponent must show that favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members. Smith, 223 Ill. 2d at 449. In other words, where predominance is established, a judgment in favor of the class members should decisively settle the controversy, and all that should remain is for the other class members to file proof of their claims. Smith, 223 Ill. 2d at 449.

With these principles in mind, we turn to the trial court's decision. The trial court held:

"The commonality requirement is not met in this case. There is no evidence of a company-wide policy, or even a department-wide policy[,] depriving proposed class members of their lawfully earned wages. Plaintiff has offered no evidence supporting the contention that Plant Manager Jonathon Harn edited employee's [sic] time records to stay within budget. Nor is there evidence that the time edits by Harn were anything other than the corrections he claimed them to be. Instead, the evidence indicates that Harn checked with employees' supervisors in an attempt to determine whether an employee had actually worked the time appearing in the record. Some employees *** testified they had worked

through lunch but were not paid, but far more employees testified they always got their lunch, making the prospect of a class[-]wide lunch violation unlikely. [Citation.] Further, it was clear that some employees were required to wear uniforms and/or safety equipment, while others were not. Some employees testified they changed into and/or out of the uniforms or cleaned up on work time, others did so on their own time, still others did not change clothes at all. ***

Whether the programmed parameters of [defendant's] timekeeping system resulted in unlawful deductions from hours worked pre-shift, post-shift, and during lunch, whether defendant[']s manual edits of class members' time, and whether defendants [sic] failed to pay class members for all overtime hours worked in excess of 40 hours in the work week based on missed lunches or time spent changing clothes are thus questions requiring individualized determinations. They cannot be answered simply by reviewing defendant's time system records."

As to the predominance issue specifically, the court first reviewed a number of cases provided by the parties. Then it held:

"Contrary to plaintiff's [sic] contention, the use of defendant's records here will only show that an employee's time was edited, not that the employee's time was properly or improperly edited. No company-wide policy required employees to wear uniforms, or required employees to work through lunch. As a result, the successful adjudication of these questions of law and fact as to plaintiffs Allbee, Varela, or Torres will not establish a right of recovery for the proposed class of 200-300 persons generally. While individualized damages determinations are proper and will not defeat a class action, individualized

determinations of liability are not. The level of individualized proof required here to establish whether or not an employee was harmed at all overwhelms any possible common issues. As a result, commonality and predominance are lacking."

Plaintiffs argue that the trial court erred in finding that they had not established commonality and predominance. Regarding the trial court's commonality determination, plaintiffs challenge that there was no evidence submitted of any company-wide policies. Plaintiffs argue that the trial court made impermissible determinations of the substantive merits as to the existence of company policies, or else ignored the evidence altogether. Plaintiffs specifically identify the "no-pay" policies they assert defendant followed: the early-in policy, the requirement of changing into uniform and cleaning up, and the automatic time deductions programmed into the timekeeping system (including the time-rounding system). Plaintiffs assert that all class members were affected by these policies and that the trial court improperly ignored the evidence or resolved the merits in denying the existence of company policies that affected the pay employees received.

Defendant argues that the trial court determined that plaintiffs raised four common factual issues: (1) the editing of time records by the plant manager for the purpose of staying within the budget; (2) a class-wide practice of requiring employees to work through lunch; (3) a company or plant-wide practice regarding changing into and out of uniforms; (4) and time-rounding practices that had the effect of shorting employees compensable time. Defendant then argues that the trial court properly determined that there was no evidence to support any of the factual issues it identified. Contrary to defendant's argument, the trial court repeatedly acknowledged the existence of evidence supporting plaintiffs' contentions. For a single example, the trial court cited specific evidence demonstrating that some employees changed into and out of uniforms on work time, others changed

on their own time at work, and others never changed or never wore a uniform. This is hardly "no evidence." Instead, the trial court impermissibly overstated its conclusion. Moreover, the trial court's conclusion of "no evidence" in the face of contradictory evidence supplied by plaintiffs suggests that it considered and weighed the evidence to resolve the evidentiary dispute. And this, in turn, concedes plaintiffs' point that the trial court improperly determined the merits of the common factual issues.

The issue of the purpose of the edits to time records appears to be common across the proposed class. Employees whose time was not edited would not have been harmed by the practice; employees whose time was edited may have been harmed, depending on the resolution of the issue of the purpose of the editing practice. Resolution of this issue would appear to advance the merits of the claims and, thus, we hold this to be a common issue.

The trial court erred by resolving the merits of the time-editing issue to conclude that there was no evidence to support plaintiffs' conception of the time-editing issue. At the class certification stage of this matter, the trial court was only to ascertain the existence of common factual issues and not to resolve their merits. By resolving the merits, the trial court effectively conditioned class certification on plaintiffs' ability to prevail on the merits. This practice is strongly disapproved. Eggleston, 657 F.2d at 895 (trial court may not conduct a preliminary inquiry into the merits of the suit in order to determine whether it may be maintained as a class action).

Likewise, the existence of a policy or practice of requiring employees to work through their lunch periods is a common issue under plaintiffs' allegations. That the evidence advanced at the class certification stage may be weak should not foreclose plaintiffs' opportunity to attempt to prove the issue. See Eggleston, 657 F.2d at 895. Similarly, the issues relating to uniforms, time-rounding,

and automatic time deductions are all common issues that, at this stage in the proceedings, plaintiffs should be allowed to develop.

Defendant generally approves of the trial court's holding that "[t]here is no evidence" to support the common issues identified above. As we explained, however, the trial court overstated its conclusion and further erred in weighing and determining the effect of the evidence in relation to common issues. Its judgment went more to the ultimate success of plaintiffs' case than to whether it could identify common issues, the resolution of which would determine the matter. As a result, we reject defendant's argument.

Once again, we note that the trial court encroached into the merits of plaintiffs' claims when attempting to resolve the issue of commonality. In deciding the issue of commonality, the trial court did not need to weigh and resolve the evidence; rather, it needed only to identify the common factual and legal questions present in this matter. The resolution of the common factual and legal issues will occur during proceedings on the merits. Given that any discovery at this stage should have been aimed at ascertaining the existence of a class, crediting defendant's evidence on the merits was erroneous and premature. Accordingly, we hold that the trial court impermissibly resolved factual disputes in order to conclude that plaintiffs failed to present common factual and legal issues, and this represents the application of an improper legal standard in the trial court's judgment.

We now turn to whether the trial court appropriately determined if common issues predominated over individual issues. The trial court held, pertinently, that individualized liability determinations overwhelmed any possible common issues. Plaintiffs argue that the issues of whether employees were required to wear uniforms and whether the time spent donning and doffing uniforms was compensable affect all of the class members. Likewise, the time-rounding, automatic time

deductions, and editing apply to all class members, and favorable determinations would entitle all affected class members to recover; any individual variations would be in the amount of damages and not in liability. Defendant counters by arguing that the effect on each individual of each issue will determine defendant's liability to that individual. Thus, defendant argues that the uniform issue must be determined for each individual employee. While true, this overlooks plaintiffs' contention that the automatic time deductions were initiated to account for the donning and doffing of uniforms. Based on this, plaintiffs' view that resolution of the issue will be more in the nature of a calculation of damages appears correct. If a trial on the merits of the uniform issue reveals that there was a policy regarding wearing uniforms, a policy regarding compensating donning and doffing uniforms, and an automatic time deduction to account for donning and doffing uniforms, then it would become a damages calculation to determine those employees who were harmed by these policies. The bulk of the parties' efforts apparently would be directed toward the legal resolution of the issues, and individual damages determinations would be accomplished by mechanically processing defendant's time records. Accordingly, the trial court erred in determining that this issue would not predominate over individual issues associated with it.

The effect of time-rounding appears to be a common issue as well. If plaintiffs establish that the time-rounding practice favors defendant and that defendant further implemented the early-in policy to take advantage of the time-rounding, then class members would be entitled to recover.

Likewise, working through lunch is a predominantly common issue. If there were a policy and if defendant's timekeeping system automatically deducted a lunch period, then establishing these facts would entitle the class members to recover.

We also believe that time-editing is a predominantly common issue. Plaintiffs are attempting to demonstrate that time-editing was done for the purpose of depriving workers of compensable time. We can see that evidence showing that defendant was attempting to stay within budget, or to come in under budget, or showing that defendant's managers were pressured to meet expense budgets, or to reduce expenses, would be relevant to this inquiry. We note, however, that at the class-certification stage plaintiffs do not have to make that showing--it is for the merits.

Based on these considerations, we hold that the trial court erred in determining that common issues did not predominate over individual issues. While we discern that, if the common issues are proved in favor of plaintiffs, the trial court would face significant individual variations in damages, this should not defeat the determination that the commonality/predominance prerequisite is satisfied. Clark, 343 Ill. App. 3d at 549 ("[i]ndividual questions of injury and damages do not defeat class certification"). The establishment of these common issues would allow class members affected by each issue to recover. The individual determination of whether each member was affected is more in the nature of a damages calculation than a liability determination.

Defendant relies on Avery and Smith in arguing that individual determinations of liability outweigh any common issues. We disagree. In Avery, the individual issues of determining the wording of each separate and distinct contract that each class member agreed to and its legal effect outweighed any conceivable common issues. Avery, 216 Ill. 2d at 135. Here, by contrast, determining, for example, whether there was a policy to wear a uniform, who was affected, and whether donning and doffing the uniform was "work" are all issues that will affect many if not all class members in the same fashion. There is not the individuality in the inquiry as in determining the legal effect of a number of different insurance policies. Likewise, in Smith, proximate causation

depended on individual assessments to determine liability. Smith, 223 Ill. 2d at 454. Here, the determination of defendant's policies and practice regarding timekeeping, uniforms, and the like will affect the members of the proposed class in the same way. Resolution of the issues can be had as a mass, rather than individually--the individuality will come in the damages calculations (assuming, as we must at this stage, that plaintiffs' claims are meritorious (see Szabo, 249 F.3d at 677, quoting Eggleston, 657 F.2d at 895 (inquiry into class certification is limited to determining " 'whether [the] plaintiff is asserting a claim which, assuming its merits, will satisfy the requirements' " for class certification)), and individual variations in damages will not defeat class certification (Clark, 343 Ill. App. 3d at 549 ("[i]ndividual questions of *** damages do not defeat class certification")).

Defendant also defends the trial court's factual resolutions of the issues of time editing, uniforms and safety equipment, and time-rounding. This argument is without merit because the trial court should have identified that the issues existed, rather than resolved the issues on their merits. Accordingly, the trial court erred in holding that plaintiffs failed to demonstrate that the common issues predominated.

Section 2--801(3) requires that the representative parties will fairly and adequately protect the interests of the class. 735 ILCS 5/2--801(3) (West 2006). "The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp., 345 Ill. App. 3d 992, 1004 (2004). The test of adequate representation is whether the interests of the named parties are the same as the interests of those who are not named. P.J.'s, 345 Ill. App. 3d at 1004. The trial court held that, because named plaintiff Cruz had been a supervisor, and some of the claims involved employees being "rousted" by

supervisors, this could cause a conflict between class members and the named plaintiffs. The trial court concluded, based on this, that the named plaintiffs were inadequate to represent the class interests.

Plaintiffs argue that this was error. Plaintiffs argue that, because Cruz was a low-level supervisor and experienced the same detriments of uncompensated time, his interests are not antagonistic to those of class members who suffered the same detriment but were not supervisors. Plaintiffs further argue that, even if Cruz's interests are not identical to those of the class as a whole, the proper procedure would be to decertify Cruz alone if the other named plaintiffs are otherwise adequate. We agree.

The trial court relied on defendant's argument that there is an inherent conflict of interest between supervisors and their subordinates in determining that Cruz would not satisfy the adequacy prerequisite. In turn, defendants quoted from Allen v. City of Chicago, 828 F. Supp. 543, 553 (N.D. Ill. 1993), in making that argument. Allen, however, does not stand for such a proposition. Instead, it found that conflict actually existed between the class representatives and the class members where multiple class members and representatives would be competing to be reinstated to the same position. Allen, 828 F. Supp. at 553. There is no similar argument raised here that the class members would be competing amongst themselves for limited relief. The trial court also relied on Harrison v. Wal-Mart Stores, Inc., 170 N.C. App. 545, 554, 613 S.E.2d 322, 329 (2005), for the proposition that, as a result of the conflict between supervisors and their subordinates, supervisors may be inappropriate class representatives because they may be the cause of another class member's complaint. In Harrison, however, there was uncontroverted evidence in the record that some of the supervisor-named representatives denied causing subordinates to work off the clock, even while

there was other evidence that the same supervisor-named representatives directed or knowingly allowed their subordinates to work off the clock. Here, by contrast, the trial court noted that other supervisors (but it did not specify whether they were also class members) had been complained about for "rousting" class members to attend to their work stations before their shifts began, but Cruz was not among those supervisors. We therefore find the trial court's reliance on Allen and Harrison to be misplaced.

Instead, we note that the supervisor-subordinate conflict may disappear when the supervisor shares the same interest as the subordinate in ending the improper practice. Jefferson v. Windy City Maintenance, Inc., No. 96--C--7686 (N.D. Ill. August 4, 1998). Here, Cruz alleges that he, like all other class members, was not given credit for the compensable time that he worked before and after his shift and during lunch. His interest in receiving all the pay due him for the time he worked is identical to that of the other class members. Moreover, in the absence of any allegations or evidence that Cruz directed other class members to work off the clock, or that, as in Harrison, Cruz denied giving such directions in spite of directly contradicting evidence, we do not believe it was appropriate to deny his adequacy as a class representative given his identical interest in receiving full pay for all the time he worked. If such evidence were to come to light during discovery, however, then he could be discharged as a class representative.

Moreover, we do not believe that, even if Cruz was not an adequate representative for the class, this destroyed the adequacy of the remaining named plaintiffs. The trial court held that, because of the inchoate and unsubstantiated conflict between Cruz, a supervisor, and the other named plaintiffs (nonsupervisors), all of the named plaintiffs were not adequate class representatives. This holding was clearly erroneous. Rather than invalidating all class representatives, an inadequate

representative may be removed and leave may be granted to the plaintiffs to seek a substitute representative who adequately represents the class. See In re Discovery Zone Securities Litigation, 169 F.R.D. 104, 109 (N.D. Ill.1996) (where a conflict of interest is likely with a class representative, he or she may be discharged and a replacement may be sought). We fail to see the logic in denying certification to a class that includes nonsupervisors simply because a supervisor was proposed to be a class representative. Instead, it seems better to discharge the supervisor and allow the class to be certified if the other prerequisites are met. Accordingly, we hold that the trial court applied improper legal criteria in holding that all of the named plaintiffs would not adequately represent the interests of the class.

The last prerequisite is that a class action must be an appropriate method to fairly and efficiently adjudicate the controversy. 735 ILCS 5/2--801(4) (West 2006). The appropriateness requirement is satisfied if the plaintiff can demonstrate that "the class action (1) can best secure the economies of time, effort, and expense and promote a uniformity of decision or (2) can accomplish the other ends of equity and justice that class actions seek to obtain." Clark, 343 Ill. App. 3d at 552. The fact that we have determined that plaintiffs have established the previous three prerequisites (numerosity, commonality, representation) makes it evident that a class action is appropriate. See Clark, 343 Ill. App. 3d at 552. The numerous individuals in the proposed class and the existence of predominant common questions of fact or law indicate that a class action would serve the economies of time, effort, and expense as well as prevent inconsistent results. Litigating the claims on an individual basis would waste judicial resources, while addressing the common issues in a single proceeding would aid judicial efficiency and administration. Accordingly, we hold that the trial court erred in determining that a class action was not an appropriate method to adjudicate the matter.

Plaintiffs additionally argue that the trial court failed to make any findings regarding their post-seven-minute-rule claims. Plaintiffs contend that the trial court's ruling encompassed only the time period before defendant implemented its seven-minute rule requiring employees to punch in and out within seven minutes of the scheduled beginning and end of their shifts. According to plaintiffs, this requirement results in employees' performing substantial amounts of uncompensated work, because defendant's timekeeping system rounds to the quarter-hour. Thus, up to seven minutes before the shift starts will be rounded forward to the time the shift starts, and up to seven minutes after the shift ends will be rounded back to the time the shift ends. Plaintiffs maintain that the class consists of the more-than-300 former and current hourly production and maintenance employees. Plaintiffs further contend that defendant's records concede that a large number of employees were affected by the seven-minute rule in conjunction with its rounding policy.

We agree that the trial court did not render a ruling on this issue. However, we also believe that our determinations above can be extended to the post-seven-minute-rule claims. With regard to numerosity, plaintiffs identify all current and former production and maintenance employees as potential members of the class. Plaintiffs note that defendants argue that as many as half of all current and former production and maintenance employees have not been affected by the policy. Even if this is so, upwards of 100 individuals have been affected by the policy, and this would satisfy the numerosity requirement.

The effect of the seven-minute-rule presents a common issue. All of the employees subject to it would appear to be equally affected. Accordingly, commonality appears to have been shown. Predominance is likewise apparent, as determining the effect, good or ill, of the seven-minute rule will resolve the issue. The representation of the proposed class appears to be the same as articulated

above. We also note that all of the named plaintiffs except Cruz appear to have been subjected to the seven-minute rule. The appropriateness requirement is generally satisfied where the preceding prerequisites have been determined. Thus, we believe that the class can be certified for the post-seven-minute-rule claims as well and that the trial court's failure to consider the claims was likely an oversight.

We now consider the relief to grant. Often, where a trial court abuses its discretion by employing impermissible legal criteria, the reviewing court will point out the proper criteria and remand for the trial court to exercise its discretion through the application of the appropriate criteria. However, we note that, in class certification cases with postures similar to this one, there is support for an outright reversal by the appellate court and a remand to the trial court with instructions to certify the class. See Ramirez v. Smart Corp., 371 Ill. App. 3d 797 (2007) (denial of class certification was reversed and the cause remanded for further proceedings consistent with the appellate court's opinion); In re Nassau County Strip Search Cases, 461 F.3d 219 (2d Cir. 2006) (denial of certification reversed; district court instructed to certify a class as to liability and to consider anew whether to certify a class as to damages). We follow these cases here and reverse the judgment of the trial court denying class certification, remand the cause, and direct the trial court to certify the class. (We note that, unlike in Nassau County, no issue has been presented or ruled upon regarding creating a damages class or other subclasses. As a result, our instructions are directed to the sole issue of class certification presented in this appeal.)

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded with instructions for further proceedings consistent with this disposition.

Reversed and remanded with instructions.

BYRNE and ZENOFF, JJ., concur.