FOURTH DIVISION
JUNE 28, 2007

No. 1-06-0140

| | | |
|---|---|---|
| ARYEH KITZES and LUDMILLA KITZES, | ) | Appeal from the |
| Individually and on Behalf of Others Similarly Situated, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 03 CH 19657 |
| | ) | |
| HOME DEPOT, U.S.A., INC., | ) | Honorable |
| | ) | Sophia H. Hall, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs Aryeh and Ludmilla Kitzes appeal an order of the circuit court of Cook County denying their motion for class certification of their complaint against defendant Home Depot U.S.A., Inc., which alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2004)).

Plaintiffs' second amended complaint, filed on October 15, 2004, alleges that defendant sold wood products for outdoor residential use that were treated with chromated copper arsenate (CCA) preservatives. Plaintiffs allege that all CCA-treated wood is defective because it leaches toxic chemicals, such as arsenic and chromium VI to the surface of the wood and to nearby soil. Plaintiffs allege that defendant misrepresented that the CCA-treated wood was safe for outdoor use and that the sale of CCA-treated wood without disclosure of the leaching constituted false, deceptive or unfair conduct under the Consumer Fraud Act and other similar state consumer fraud

statutes. Plaintiffs sought to bring claims on behalf of themselves and all other similarly situated consumers in Illinois and states with similar consumer fraud laws who had purchased CCA-treated wood from Home Depot since November 2000. Plaintiffs proposed to exclude from the class individuals who bring claims for increased personal risk, personal injury or property damage resulting from CCA-treated-wood products.

On January 24, 2005, plaintiffs moved for class certification. Plaintiffs submitted a declaration from Richard P. Maas, a professor of environmental science at the University of North Carolina-Asheville and director of the university's Environmental Quality Institute, who performed and reviewed a number of studies related to the leaching of arsenic in CCA-treated wood. Professor Maas concluded with a reasonably high degree of scientific certainty that CCA-treated wood used in outdoor settings leaches arsenic to the surface of the wood and the surrounding soil, regardless of factors such as use, location, age and sealant history (except for very recently sealed surfaces).

Plaintiffs also submitted a declaration by Phillip R. Waier, a civil engineer and principal engineer for RS Means/Reed Construction Data, a firm which researches, analyzes and publishes nationwide construction cost information. Waier stated a proposed methodology for calculating the removal and replacement costs associated with pressure-treated lumber in residential settings in multiple states.

Defendants submitted opposition materials, including depositions of the plaintiffs. In his deposition, Aryeh stated that he was still using the deck. Aryeh stated that he had replaced wood on his deck with treated wood several times up through 2001. He also stated that no one had ever told him that having CCR-treated wood on his deck would diminish the value of his

property. Ludmilla stated that in May 2001, plaintiffs had a contractor build a fence for them from treated wood and that there was a big sign near that wood stating that the wood contained arsenic. Ludmilla stated that they asked the contractor why he was using that wood and that he replied that it was "no big deal" and that all treated wood contained arsenic. Ludmilla testified that she did not believe that.

Defendant also submitted a February 12, 2002, press release from the Environmental Protection Agency, announcing a voluntary decision by industry to move to the use of alternatives to CCA-treated wood by December 31, 2003, adding that by January 2004, the EPA would not allow CCA products for residential uses like play structures, decks and picnic tables. The press release further declared:

> "EPA has not concluded that CCA-treated wood poses unreasonable risks to the public for existing CCA-treated wood being used around or near their homes or from wood that remains available in stores. EPA does not believe there is any reason to remove or replace CCA-treated structures, including decks and playground equipment. EPA is not recommending that existing structures or surrounding soils be removed or replaced. While available data are very limited, some studies suggest that applying certain penetrating coatings (e.g., oil-based semi-transparent stains) on a regular basis (one re-application per year or every other year depending on wear and weathering) may reduce the migration of wood preservative chemicals from CCA-treated wood."

Defendants also submitted a declaration from Theresa S. Bowers, who holds a Ph.D. in geochemistry and is a specialist in soil contaminant levels and exposure models as the principal of Gradient Corporation. Bowers stated in part that a panel of Florida physicians and toxicologists commissioned by the Florida Department of Health concluded that there was no evidence that clinical symptoms or disease has occurred due to arsenic exposure from the ordinary and customary use of playground and recreational structures made from CCA-treated wood. Defendants submitted a June 14, 2002, letter to the State of Florida's Secretary of Health from the Florida Physicians Arsenic Workgroup that states in part as follows:

> "Used since the 1960s, CCA-treated wood has never been linked to skin diseases or cancer in children exposed during recreational use. Manifestations of arsenical skin diseases and cancers would be expected after 30+ years of use if toxic levels of arsenic were leaching from the wood. Thus, the levels of arsenic in and around CCA-treated wood in playgrounds and recreational facilities does not appear to be sufficient to adversely affect the health of children or adults."

The Bowers declaration also stated that a 2001 analysis by Gradient Corporation showed that consuming drinking water containing arsenic at either the federally imposed limit applicable during part of the proposed class period or at the limit imposed effective as of February 2002 resulted in a significantly greater dose of arsenic than would be experienced in a reasonable maximum exposure scenario for CCA-treated wood. The Bowers declaration also contained a risk assessment examining a range of situations encountered among people who possess CCA-treated

wood structures in various states and nationwide, showing that the exposure and potential risk may differ as much as five hundredfold between individuals.

Defendant submitted a deposition from Professor Maas in which he stated that he was not sure whether any good studies had been done showing an association of reported cases of cancer with exposure to CCA-treated wood.

Defendant submitted a declaration from Roland Jarvis, Home Depot's vice president of merchandising for its lumber department. Jarvis stated that prior to 2004, Home Depot sold approximately 973 different treated-wood products, from approximately 28 different vendors that sold different species of wood, treated by differing pressure techniques with different chemical formulations of CCA. Jarvis stated that Home Depot does not have a system for tracking purchasers of wood, and its volume of sales makes such a system virtually impossible. Jarvis stated that once the stock-keeping unit tag is removed from a piece of wood, there is no way to determine whether a piece of wood was purchased from a Home Depot location, thus making it infinitely more difficult--if not impossible--to determine, solely based on product identification, which chemicals might be present in the wood. Jarvis also stated that 40% of Home Depot's treated-wood product sales were made, not to end users, but to professional customers, such as home builders, contractors, and construction professionals. Jarvis stated that in 2001, Home Depot sold approximately 15% of the treated wood sold in the United States.

Defendants submitted a declaration from Paul Cooper, Ph.D., a professor of wood science at the University of Toronto who has researched CCA-treated wood for over 25 years and is considered an international authority on preservative fixation and leaching, especially as it relates to CCA-treated wood. Cooper opined that wood is a natural organic substance and no two

pieces of CCA-treated wood are identical and no two structures are the same. Cooper also opined that soil concentration and availability of CCA constituents for exposure to individuals may vary by several hundredfold, depending upon a number of variables. Cooper stated that the variables and conditions that can affect the amounts of CCA constituents either leaching or dislodging from preserved wood include: the treatment method; the type of wood being treated; the part of the tree from which the lumber was cut; the species of source wood; the season when the lumber was harvested; the size, shape, and condition of the lumber when treated; the type of CCA formulation and concentration of solution used for treatment; the fixation method used; the climate where the wood is used; the amount and nature of precipitation; the acidity of precipitation; the type of surface water to which wood is exposed; the type of structure built out of wood, as well as the size and location of lumber on the structure; the use of the structure; the existence and amount of sawdust; the length of time in service; and the presence of surface treatments.

Defendants submitted a declaration from John R. Hauser, Sc.D., the Kirin Professor of Marketing and head of the management science area at the Sloan School of Management at the Massachusetts Institute of Technology, who has previously been an expert witness conducting market surveys on the importance of product features, the impact of rumors, and potential consumer confusion. Hauser developed a survey on the characteristics of CCA-treated wood consumers that in part asked about their reactions to information about CCA-treated wood leaching. Hauser's survey showed, for example, that 26% of consumers knew at the time of the survey that CCA-treated wood contained chemicals that can contaminate soil and water and that 65.8% of those consumers knew it at the time of building, repairing or purchasing a CCA-treated wood structure. The survey also showed that had they known of information about CCA-treated-

wood leaching at the time they built, repaired or purchased their structure, 32.9% of the consumers would have been extremely likely to use the CCA-treated wood anyway, perhaps because of its benefits. Conversely, only 25% responded that it was extremely likely that they would have paid for more expensive nontreated wood that would provide the same benefits as the treated wood. There was also a wide range of responses to questions about what consumers would do now if they believed the warnings about CCA-treated wood.

Following a hearing on the matter, the trial court entered a memorandum opinion and order on December 21, 2005, denying class certification. The circuit court ruled that the class should not be certified because of individual questions necessary to identify whether proposed class members in fact purchased CCA-treated wood from Home Depot. The circuit court also ruled that plaintiffs had not shown a common question of fact with respect to actual damage. The order also states that plaintiffs failed to prove they could adequately represent the class. Plaintiffs petitioned this court for leave to appeal pursuant to Supreme Court Rule 306(a)(8). 210 Ill. 2d R. 306(a)(8). This court granted leave to appeal on February 23, 2006.

Plaintiffs argue that the trial court erred in denying the class certification in this case. Decisions regarding class certification are within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 125-26 (2005). An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. People v. Illgen, 145 Ill. 2d 353, 364 (1991). However, " '[a] trial court's discretion in deciding whether to certify a class action is not unlimited, and is bounded by and must be exercised within the framework of the civil procedure

rule governing class actions.' " <u>Avery</u>, 216 Ill. 2d at 126, quoting 4 A. Conte & H. Newberg, Newberg on Class Actions §13:62, at 475 (4th ed. 2002). Ultimately, "[o]ur function as a reviewing court is to determine whether the lower courts reached the correct result. The reasons given by a lower court for its decision or the findings on which a decision is based are not material if the judgment is correct." <u>Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund for the City of Chicago</u>, 199 Ill. 2d 414, 422 (2002). A judgment may be sustained upon any ground warranted by the record. <u>Bell v. Louisville & Nashville R.R. Co.</u>, 106 Ill. 2d 135, 148 (1985).

Section 2-801 of the Code of Civil Procedure (735 ILCS 5/2-801 (West 2004)) provides that an action may proceed as a class action only if the circuit court finds: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of fact or law common to the class, and those common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Decisions regarding class certification are within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria. <u>Avery</u>, 216 Ill. 2d at 126. Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23), and federal decisions interpreting Rule 23 are persuasive authority with regard to the question of class certification in Illinois. <u>Avery</u>, 216 Ill. 2d at 125.

In this case, the circuit court ruled that the issues with regard to commonality made a class action an inappropriate method for the fair and efficient adjudication of the controversy.

Initially, we note that the requirement in section 2-801(2) that questions of law or fact common to the class predominate over any questions affecting only individual members is drawn from Rule 23(b)(3); its purpose is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation, and it is a far more demanding requirement than the commonality requirement of Rule 23(a)(2). Smith v. Illinois Central R.R. Co., 223 Ill. 2d 441, 448 (2006). "The test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court." Smith, 223 Ill. 2d at 448-49. "Such an inquiry requires the court to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law." Smith, 223 Ill. 2d at 449.

For example in Ardoin v. Stine Lumber Co., 220 F.R.D. 459 (W.D. La. 2004), another purported class action involving CCA-treated wood, the court opined as follows:

> "Commonality, as contemplated by Forbush and Rule 23, requires only a generalized showing. The potential class members in the instant case share many elements of their causes of action. All own the allegedly defective products that prompted the law suit, and all have an interest in resolving the question of whether they are entitled to compensation or remediation because of their ownership.
>
> The plaintiffs point out numerous scientific and legal areas of commonality between the parties. For instance, their experts contend that exposure places all of the potential plaintiffs at risk for cancer. *See testimony of Dr. John Rosen, and Dr. Richard Maas,*

*and Consumer Product Safety Commission, Fact Sheet–Chromated Copper Arsenate (CCA)--Treated Wood Used in Playground Equipment.* But as the defendants point out, the purported class would be suing on the basis of defective products, not personal injury.

Initially, the defendants alleged that the variations in state law was a factor preventing commonality of questions of law. The plaintiffs have since narrowed the scope of their potential class to plaintiffs in Louisiana, thus rendering that issue moot.

But the individualized nature of these claims still prevents the simultaneous resolution of all or a significant portion of the potential class's complaints. Furthermore, since there is variation in wood, soil, usage, and environmental conditions, it is almost impossible to claim that the class members truly share common issues of fact, because some pieces of wood may pose more of a potential threat than other pieces.

The defendants also have individualized defenses against each plaintiff. For instance, some plaintiffs hired contractors to construct structures with CCA-treated wood. These contractors may be partly liable in subrogation for failure to warn of the risks of CCA. Other plaintiffs purchased the wood themselves and were aware of but assumed the risks of the CCA treatment or even

10

disobeyed safety warnings about it, bringing up the possibility that the defendants should be entitled to credit for the comparative fault of the plaintiffs.

Some of the plaintiffs may also allege that they suffered physical injury from the wood. Even among those not alleging physical injury, there are some who will demand compensation for environmental remediation and others who will also want to be paid for the diminished value of their homes. Some will expect no compensation, and there will be many combinations of these scenarios. As the potential class members' claims are examined closely, the common links between them dissipate into many distinctive categories.

While the resolution of this matter as a class will settle, for some purported class members, the question of whether they are entitled to a remedy for defective products under La.C.C. Art 2524 and 2475, it will leave virtually every other question, including the appropriate measure of damages and the existence of defenses, unresolved. Because of this, the plaintiffs cannot satisfy even the light burden of showing at least one issue whose disposition will resolve the claims of a significant number of the class members." (Emphasis in original.) Ardoin, 220 F.R.D. at 462-63.

Plaintiffs argue that Ardoin is distinguishable because of the substantive difference between their Consumer Fraud Act claims and the Louisiana statutory product liability claims at issue in Ardoin. Section 2 of the Consumer Fraud Act provides that "deceptive acts or practices *** or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful." 815 ILCS 505/2 (West 2004). Section 10a(a) of the Act authorizes private causes of action for practices proscribed by section 2, stating, in pertinent part: "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 2004). To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. Avery, 216 Ill. 2d at 179-80. Plaintiffs argue that issues regarding variations in leaching of CCA-treated wood and any attendant health risk have no bearing on their Consumer Fraud Act claim.

However, under the Consumer Fraud Act, materiality is tested with a reasonable person standard--i.e., whether the omission "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 505 (1996); see Cirone-Shadow v. Union Nissan of Waukegan, 955 F. Supp. 938, 944 (N.D. Ill.1997) ("The standard for materiality under the [Consumer Fraud Act] is an objective standard"). In this case, it might be fairly asked why the fact that CCA-treated wood

leaches in an outdoor setting would be considered material. Plaintiffs' own depositions suggest that the reason they would not have bought the wood had they known of the leaching is precisely because of a purported health risk associated with the leaching. Plaintiffs suggest no other reason why the leaching would constitute a material fact.

As in Ardoin, the defendants have individualized defenses against each plaintiff. According to Roland Jarvis, 40% of Home Depot's treated-wood product sales were made not to end users, but to professional customers, such as home builders, contractors, and construction professionals, raising the same possible issues of subrogation, comparative liability, and so on. The prevalence of potential third parties also raises the possibility that those third parties may have conveyed information about CCA-treated-wood leaching to the potential class members.

The question of what individual potential class members knew is problematic even when parties like contractors are not involved. The circuit court did not think it a problem, but probably erred in so concluding by focusing only on the named plaintiffs. To prevail under the Consumer Fraud Act, a plaintiff must show proximate cause, and "to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 155 (2002); see Connick, 174 Ill. 2d at 490 (1996); Kelly v. Sears Roebuck & Co., 308 Ill. App. 3d 633, 641 (1999).

In this case, the named plaintiffs had been told by a contractor that all wood of this sort contained arsenic. To the extent that the contractor did not expressly mention leaching, the named plaintiffs might be able to prove that they were actually deceived, but that would not prove that all members of the potential class were actually deceived. The Hauser declaration shows that

13

some consumers knew that CCA-treated wood contained chemicals that could contaminate soil and water, but purchased the product anyway. Differences in individual consumers' knowledge regarding CCA-treated wood was a factor in the denial of class certification in Jacobs v. Osmose, Inc., 213 F.R.D. 607, 615-16 (S.D. Fla. 2003), and in the denial of amended complaint in Jacobs v. Home Depot, U.S.A., Inc., 219 F.R.D. 549, 551 (S.D. Fla.. 2003), where the same plaintiff sought to limit the complaint to a single defendant--Home Depot--and to claims alleging breach of warranty and violations of the state's consumer protection law. See also Martin v. Home Depot, U.S.A., Inc., 225 F.R.D. 198, 202 (W.D. Tex. 2004) (following Jacobs on the issues of knowledge and complications raised by intermediary third parties).

Plaintiffs cite Gordon v. Boden, 224 Ill. App. 3d 195, 202 (1991), a case that approved certification in a class action involving adulterated orange juice, as supporting their position. However, the defendant in that case did not suggest that a significant portion of the potential class might not even know it had purchased its orange juice. In this case, as the trial court noted in its memorandum opinion and order, there are difficult issues of fact relating to class membership in the first instance. The record shows that Home Depot does not have a system for tracking purchasers of wood and that the wood may bear no marking identifying it as being sold by Home Depot. The problem is again magnified by the sales to third parties, such as contractors, which may result in potential class members not knowing whether their CCA-treated wood was purchased from Home Depot.

Plaintiffs also cite Barliant v. Follett Corp., 74 Ill. 2d 226, 234 (1978), but the defendant in that case was not merely the seller of books, but the publisher. Accordingly, the record clearly

14

showed the defendant to be the source of the product at issue. In this case, the defendant is a retailer and did not produce the CCA-treated-wood products at issue.

The circuit court also ruled that plaintiffs failed to show a common question of fact as to the issue of actual damage. Plaintiffs produced no evidence that their property value has decreased, as they typically would be required to do under the Consumer Fraud Act. Plaintiffs did not show that the presence of CCA-treated-wood structures decreases property value as a general proposition. The complaint here was not dismissed, but even assuming for the sake of argument that plaintiffs could produce evidence of actual damages, the inquiries into any actual damage suffered by each member of the class are likely to be highly individualized and site-specific. Plaintiffs argue that the circuit court failed to consider various alternative methods of calculating damages, but that argument presupposes that actual damages would be proved as to all members of the class if the named plaintiffs can prove they suffered damages, which appears to be incorrect.

This case is distinguishable from Ardoin, insofar as the plaintiffs there limited their potential class to plaintiffs in Louisiana. In this case, plaintiffs here seek to certify a class including plaintiffs in other states with "similar" consumer protection statutes, which may nevertheless reduce the commonality of the questions of law--and the commonality of questions of fact, given the apparent differences in soil, climate, etc. that exist in other states. There is also the fact that our supreme court has held that the General Assembly did not intend the Consumer Fraud Act to apply to transactions that take place outside Illinois. Avery, 216 Ill. 2d at 185.

Conversely, the plaintiffs here also seek to limit the potential class to exclude individuals who bring claims for increased personal risk, personal injury or property damage resulting from

CCA-treated-wood products. In the Jacobs litigation, the court noted--without deciding the issue--that splitting the potential causes of action raised at least the possibility that any future personal injury actions stemming from treated wood injuries would forever be barred by res judicata, which tended to suggest that plaintiffs seeking only limited economic damages may not adequately represent consumers of CCA-treated outdoor wood products. Jacobs v. Osmose, Inc., 213 F.R.D. at 617 n.12. In Ardoin, the court ruled that the claim-splitting not only affected the adequacy of representation, but also that the disparity of claims underscored the problems with establishing commonality. Ardoin, 220 F.R.D. at 466-67.

In sum, given the record on appeal, we conclude that individualized questions predominate over the common questions raised in this case. The circuit court's ruling was not arbitrary, fanciful, or unreasonable, or such that no reasonable person would take that view. Accordingly, the circuit court did not abuse its discretion in denying class certification in this case.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINN, P.J., and NEVILLE, J., concur.