# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *S37 Management, Inc. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496

---

| | |
|---|---|
| Appellate Court Caption | S37 MANAGEMENT, INC., d/b/a Mt. Prospect Place Apartments, on Behalf of Itself and All Others Similarly Situated, Plaintiff-Appellee, v. ADVANCE REFRIGERATION COMPANY, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-2496 |
| Rule 23 Order filed | September 30, 3011 |
| Rule 23 Order withdrawn | October 26, 2011 |
| Opinion filed | November 4, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly certified a class action alleging that defendant's practice of adding to its invoices a "Gov't Processing Req." charge against each customer was a misrepresentation that the charge was a governmentally mandated fee and constituted a breach of contract and a violation of the Consumer Fraud and Deceptive Business Practices Act, notwithstanding defendant's contention that common issues did not predominate and that individual issues had to be adjudicated on a case-by-case basis, thereby rendering class certification improper, since the charge appeared on all of defendant's form invoices, each class member paid the charge, the uniformly assessed charge made the damages of each class member easy to determine, and a class action was an appropriate method for the fair and efficient adjudication of the controversy. |

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 06-CH-20999; the
Hon. Sophia H. Hall, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

James K. Borcia and David O. Yuen, both of Tressler LLP, of Chicago,
for appellant.

Vincent L. DiTommaso, Peter S. Lubin, and Patrick D. Austermuehle, all
of DiTommaso-Lubin, P.C., of Oakbrook Terrace, for appellee.

Panel

JUSTICE GARCIA delivered the judgment of the court, with opinion.
Presiding Justice R. Gordon and Justice Cahill concurred in the judgment
and opinion.

**OPINION**

¶ 1    Plaintiff S37 Management, Inc., filed a class action alleging breach of contract and
violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer
Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)) against defendant Advance Refrigeration
stemming from the defendant's practice of adding to its invoice a "Gov't Processing Req."
(GPR) charge against each customer. The plaintiff moved to certify as a class the defendant's
customers that paid the GPR charge from December 11, 2001, to the present, which the trial
court granted. The defendant contends the class certification must be reversed because the
issues of injury and causation are individualized and predominate over any common issues
of law and fact among the class members. We affirm. The trial court did not abuse its
discretion in concluding that a class action was an appropriate method to resolve this
controversy.

¶ 2                              BACKGROUND
¶ 3    In 2001, the plaintiff, an apartment management company, began purchasing appliances
from the defendant, a company in the business of distributing and servicing appliances to
commercial entities. The terms of the defendant's standard contract are memorialized in
invoices; there are no written contracts between the defendant and its customers. The
defendant generated and mailed to the plaintiff an invoice for each relevant transaction. The
standard customer invoice has a line item titled, "Gov't Processing Req." The GPR is listed

-2-

after the subtotal in the sales tax section of the invoice.

¶ 4     The GPR charge was instituted by the defendant as part of its invoicing to all of its customers on September 2, 1998. According to the defendant, the GPR was a means of offsetting the administrative costs of complying with the reporting requirements of the federal, state, and local governments. From December 11, 2001, through June 28, 2002, the GPR was invoiced at $2 per transaction. Beginning July 11, 2002, the GPR increased to $3.

¶ 5     The plaintiff filed a two-count, second amended complaint alleging, on behalf of itself and other members of the class, breach of contract and a claim under the Consumer Fraud Act against the defendant based on the GPR charge in each of its invoices. The class members included:

> "All persons and entities who were customers of Advance Refrigeration who paid the Gov't Fee to Advance Refrigeration as part of a purchase during the period December 11, 2001 to the present."

¶ 6     In its complaint, the plaintiff alleged that by labeling the line item charge as a "Gov't Processing" fee, the defendant falsely represented that the invoiced charge was mandated by a governmental agency. The plaintiff contended the defendant sought to recover the fee "under the guise of a 'Gov't Processing Req'd,' that is designed solely to generate profits, not recoup government fees as falsely represented in each invoice." As a fee intended to generate profits, the inclusion of the charge in each invoice constituted a breach of contract and a consumer fraud violation. The plaintiff contended that by "misrepresenting the basis and reasons for the Gov't fee," the defendant charged the plaintiff and the putative class members $2 or $3 over the contracted price "without the permission or consent" of the plaintiff or other class members. The plaintiff alleged the GPR is an improper profit-generating device and because the same billing practice is applied to all of the defendant's customers, the claims are suitable to a class action. The plaintiff asserted the questions of law and fact grounded on the GPR charge predominate over other issues that might differ among individual members of the class.

¶ 7     In response to the defendant's notice of deposition of a corporate representative, the plaintiff produced Jean Liataud. In her deposition, Ms. Liataud stated she worked for the plaintiff as a maintenance supervisor until September 2009, when she became an inspector for the company. As a maintenance supervisor, Ms. Liataud's responsibilities included ordering supplies from its contractors. Ms. Liataud estimated that during the relevant time frame, she worked with 10 to 20 suppliers. Between 2001 and 2005, the defendant was the only supplier of appliances for the plaintiff. Ms. Liataud testified the plaintiff stopped using the defendant as its appliance supplier in 2005 because of the GPR charge. According to Ms. Liataud, after the president of her corporate employer contacted her about the defendant's GPR charge on its invoices, she discussed the nature of the GPR charge with Fred Hinkle, an employee of the defendant, by telephone. Ms. Liataud testified Mr. Hinkle told her the GPR was "a government fee." Mr. Hinkle denied making any such statement. During the same telephone conversation, Ms. Liataud asked Mr. Hinkle to send her "a letter from the government on why we were being charged this fee." After additional telephonic communications, Ms. Liataud received a letter by fax transmittal explaining the charge. After

reading the letter, Ms. Liataud faxed to Mr. Hinkle the same letter with some handwritten questions. Ms. Liataud received no response to the questions she sent by return fax. At some point thereafter, Ms. Liataud was told by her employer to look for another appliance supplier.

¶ 8		The letter Ms. Liataud received from Mr. Hinkle by fax regarding the GPR states:

> "The $3.00 fee being assessed on your customer invoice as either 'Gov't Processing Req.' or 'Service Gov't Processing Req.' is to recover the costs of required Federal, State, and Municipal governmental processing requirements. As we all know, the cost of doing business is constantly being impacted by regulatory information and tax requirements. This charge is necessary to offset those demanding requirements. If you are as frustrated as we are at the increasing demands, please call and/or write your congressman. Please remember, your letters to your elected official can make a difference."

The letter was signed "Charles E. Cardwell, Controller."

¶ 9		The defendant filed several affirmative defenses in its answer to the plaintiff's complaint and generally asserted that other issues required the court to adjudicate individually each potential claim by its customers. The defendant claimed it has a very "open" policy with its customers, including the plaintiff, which includes each customer being "given the written policy on Advance's government processing requirement ('GPR') charge if requested." The defendant further claimed that prior to entering into a business relationship, each customer receives a written proposal, "which specifically discloses the GPR charge." The defendant asserted the plaintiff "has grossly mischaracterized the GPR by referring to it as a 'Gov't Fee[,]' [because in] 'no known situation has any employee of Advance characterized the GPR as a fee that should be or would be submitted to any government agency.' " To the plaintiff's allegation that the GPR is simply a profit generating device, the defendant replied it has "carefully documented the estimated costs associated with the in house support for processing and administrating the various tax reporting requirements for the Federal, State, and Local governments." The defendant explained the GPR charge was instituted to recoup some of the costs it incurs in complying with governmental regulations. According to the defendant, the GPR was never concealed; it identified the GPR on its proposals to potential customers and on its invoices. The defendant's salespeople would discuss the GPR charge when customers first ordered from the defendant; on occasion, the salespeople would send a form letter with a written explanation of the charge to the customer. The defendant asserted the affirmative defenses that the plaintiff failed to mitigate its damages and that its payments of the GPR were voluntary. In any event, the defendant claimed class certification was improper because the putative class members presented numerous individual issues, compelling separate trials to resolve. The defendant argued that successful adjudication of the plaintiff's claims would not establish a right of recovery for other putative class members. As supporting the need for individual consideration, the defendant raised questions regarding each customer's understanding of the GPR charge, the possible receipt of the explanation form letter, each customer's possible voluntary payment of the charge, whether the charge had any impact on the customer's decision to purchase goods from the defendant, and, finally, the application of the defendant's other affirmative defenses against each putative member of the class.

¶ 10    In support of its response, the defendant included affidavits. The former coordinator of credit and collections for the defendant, Myrle Olsen, averred in her affidavit that she communicated on occasion with customers regarding the GPR charge. In February 2005, she informed the plaintiff's Jean Liataud that the GPR charge was not a tax. Ms. Olsen acknowledged Ms. Liataud did not accept Ms. Olsen's explanation of the GPR charge. Ms. Olsen referred Ms. Liataud to Mr. Cardwell for further explanation. Ms. Olsen faxed Ms. Liataud the defendant's form letter sent to customers that question the GPR charge.

¶ 11    Charles Cardwell, the defendant's controller, averred in his affidavit that he helped draft the defendant's GPR form letter sent to Ms. Liataud. He recalled speaking with Ms. Liataud by telephone about the GPR charge after she had received the form letter. Ms. Liataud asked for an explanation of the government processing requirements. Mr. Cardwell explained that the GPR was initiated to recoup some of the costs the defendant incurred in complying with government requirements. Mr. Cardwell denied telling Ms. Liataud that the GPR was a tax.

¶ 12    Donald Leach, the owner and president of Advance Refrigeration, acknowledged the defendant does not have a policy of explaining the GPR charge to all of its customers; rather, an explanation is triggered when the GPR is questioned by a customer. The defendant does not keep records of which customers it has sent the form letter explaining the GPR charge. Mr. Leach estimated the form letter was sent to, at most, 25 customers. Mr. Leach named only two customers, besides the plaintiff, with whom the GPR charge was actually discussed, out of the nearly 6,000 customers that paid the GPR charge.

¶ 13    Based on the respective written filings of the parties, the trial court granted the plaintiff's request for class certification. The defendant timely appeals.

¶ 14                                    ANALYSIS

¶ 15    Certification of a class action in Illinois is governed by section 2-801 of the Code of Civil Procedure (Code), which mandates four findings by the trial court for class certification:

> "(1) The class is so numerous that joinder of all members is impractical.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801 (West 2008).

The party seeking certification bears the burden of establishing all four prerequisites of section 2-801. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005). In assessing whether class certification should be granted, the allegations of the complaint are taken as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007). The decision to certify a class lies within the trial court's discretion. *Avery*, 216 Ill. 2d at 125-26. In exercising its discretion, the trial court " 'should err in favor of maintaining class [certifications].' " *Ramirez*, 378 Ill. App. 3d at 53 (quoting *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 545 (2003)). However, the trial court's

discretion " ' "is not unlimited and is bounded by and must be exercised within the framework of the civil procedure rule governing class actions." ' " *Smith v. Illinois Central R.R. Co.,* 223 Ill. 2d 441, 447 (2006) (quoting *Avery*, 216 Ill. 2d at 126 (quoting Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 13:62, at 475 (4th ed. 2002))). We may not undertake an independent, *de novo* evaluation of the facts. *Health Cost Controls v. Sevilla*, 365 Ill. App. 3d 795, 805 (2006). On review of the granting of a motion for class certification, we examine only whether the circuit court abused its discretion such as by the application of impermissible legal criteria. *Id*. at 805.

¶ 16    The defendant broadly argues, "the trial court's class certification finding is rooted in a misapprehension of certain key facts and misapplication of controlling case law to those facts." More specifically, the defendant contends the plaintiff failed to meet one of the prerequisites for class certification–commonality. The defendant contends that a successful adjudication of the plaintiff's individual claims will not establish a right of recovery in the other class members. The defendant reasons that no showing was made that the defendant's alleged misconduct was uniformly applied to all of its customers where no showing of contractual uniformity was made by the plaintiff.

¶ 17    To satisfy the second requirement of class certification, *i.e.*, that a common question of fact or law predominates over questions affecting only individual class members, the plaintiff must show that the successful adjudication of the plaintiff's individual claims will establish a right of recovery in favor of the other class members. *Hall v. Sprint Spectrum, L.P.,* 376 Ill. App. 3d 822, 831 (2007). "Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class. [Citation.] Such an inquiry requires the court to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 449 (2006). The issues common to the class predominate if " ' "a judgment in favor of the class members [would] decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim." ' [Citation.]" *Smith,* 223 Ill. 2d at 449 (quoting *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 434 (Tex. 2000) (quoting *Life Insurance Co. of the Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex. App. 1986))). Once the trial court determines that common questions of law or of fact predominate among the class members, the existence of questions that apply only to individual class members will not defeat the predominating common question. *Lee v. Allstate Life Insurance Co.*, 361 Ill. App. 3d 970, 976 (2005).

¶ 18    The defendant contends that because the plaintiff's understanding of the GPR was based on Ms. Liataud's conversations with Mr. Hinkle, the recovery by other class members would also turn on a similar inquiry. According to the defendant, it follows that similar misunderstandings in the communications between the defendant and the other class members with their particular sales representatives would have to be developed. The development of such testimony by each individual class member would be a "procedural nightmare" and "cause tremendous taxation of resources to the parties, their counsel, numerous third parties, and the court." The defendant reiterates this claim in its reply brief: "No advantage would be gained to allow this case to proceed as a class action since the

proceeding would result in a series of individual trials, thus failing to achieve the economies of time, effort and expense the class action intended." In support of this contention, the defendant offered the deposition testimony of Leach, Cardwell and Olsen, as evidence that its salespeople discuss contract dealings with its individual customers, including the GPR.

¶ 19 The defendant further argues that because the plaintiff's claim is based on its misunderstanding of the GPR charge, the plaintiff is unable to establish a breach of contract claim as to any other class members. The defendant contends the plaintiff's breach of contract argument is without merit because the plaintiff offered no evidence of what the contract terms of each customer's contract were or any evidence that the defendant charged any customers, including the plaintiff, more than their contractually agreed price. The defendant contends that individual trials would be necessary for each class member's claim because the testimony of the customer representative involved in the ordering process and the testimony of the defendant's sales representative for that particular customer would have to be heard before the fact finder could determine the terms of the contract and whether that particular contract was breached by the defendant. The defendant maintains it charged customers only the amount set forth in its written proposals and invoices, which included the clearly disclosed GPR charge. The defendant also claims that both materiality and proximate cause require individual inquiries. In addition to the individual inquiries necessary to establish the elements of the plaintiff's two claims, the defendant argues individual inquiries are required to determine whether the doctrine of voluntary payment or the mitigation of damages defense applies.

¶ 20 In support of its contention that common issues do not predominate and that individual issues must be adjudicated on a case-by-case basis, rendering class certification improper, the defendant relies on *Key v. Jewel Cos.,* 176 Ill. App. 3d 91 (1988), and *Kitzes v. Home Depot U.S.A., Inc*., 374 Ill. App. 3d 1053 (2007).

¶ 21 In *Key*, the plaintiffs sought a declaratory judgment that the standard franchise agreement of defendant White Hen Pantry, a division of Jewel Companies, Inc., at that time, should be construed as giving rise to an employment relationship rather than a franchise relationship, with damages to be awarded to the "employees." *Key*, 176 Ill. App. 3d at 94. Initially, the case was certified as a class action. *Id.* After considering additional briefing and oral argument, the trial court granted the defendant's motion to strike the class allegations, finding that any common questions of law in the case were "overshadowed" by questions of fact and by particular applications of the law to the individual franchisees. *Id.* In decertifying the class, the trial court acknowledged that the named plaintiffs' proof that the defendant's conduct caused their business failures would not necessarily mean that the defendant's conduct was the proximate cause of the failure of any of the other franchisees. *Id.* at 96. The plaintiffs appealed. *Id.* at 94.

¶ 22 On review, the plaintiffs argued that White Hen Pantry had identical relationships with all of its franchisees and that it breached its fiduciary duty to the plaintiffs by representing that the defendant's skills and expertise would benefit the franchisees. The plaintiffs further contended that the defendant engaged in a series of intentional misrepresentations and omissions concerning profitability, the accounting system used by Jewel for the White Hen Pantries, and the failure or termination rate of franchises. *Id.* at 96. Affirming the trial court's

decertification of the class, we found the issues raised by the plaintiffs were not common questions; rather, they were individual inquiries, of which the resolution turned on facts specific to the relationship between individual franchisees and White Hen Pantry. *Id.* at 97. We found the evidence in the record showed that different franchisees had different operating results in different periods of time. There was no evidence offered from which a judge could conclude that the experience of the plaintiffs, who were involuntarily terminated franchisees, was representative of a class that would include all franchisees. *Id.*

¶ 23        The defendant argues *Key* stands for the proposition that "[c]laims of uniform deception to a class are negated when a class representative relies on oral statements made by the defendant." This is not the holding in *Key*. In *Key*, the court found that because the named plaintiffs testified that they did not read the allegedly misleading disclosure statements, but instead relied on oral statements made by the defendant, this meant that even if the plaintiffs received misleading disclosure statements, the actual claims by the plaintiffs were dependent on what was or was not said during the individual plaintiffs' meetings with the defendant, the resolution of which would require individualized proof. *Id.* at 98. In contrast to the facts of *Key*, here, the plaintiff contends the GPR charge was misleading on its face. The plaintiff merely offers the oral communications of the defendant's salespeople as further proof that the defendant intended to mislead the plaintiffs as to the nature of the charge. We find this to be an important distinction, which is sufficient to take the present case out of the realm of *Key*.

¶ 24        In *Kitzes*, the plaintiffs sought class certification, alleging the Home Depot violated the Consumer Fraud Act by misrepresenting that certain wood products it sold were suitable for outdoor residential use when the products leached toxic chemicals to the surface of the wood and surrounding soil. *Kitzes*, 374 Ill. App. 3d at 1054-55. The trial court denied class certification, finding individual inquiries were necessary to identify whether proposed class members actually purchased the allegedly toxic wood from Home Depot. *Id.* at 1058. The circuit court also held the plaintiffs failed to show a common question of fact with respect to actual damages to adequately represent the class. *Id.* In affirming the trial court's decision holding class certification was not appropriate, this court found that because of the variations in the wood, soil, usage, and environmental conditions, it would be "almost impossible to claim that the class members truly share common issues of fact, because some pieces of wood may pose more of a potential threat than other pieces." (Internal quotation marks omitted.) *Id.* at 1060. We also found class certification was not warranted because of the individualized defenses Home Depot might assert against each potential plaintiff. *Id.* Specifically, some plaintiffs hired contractors to construct structures with the wood and, therefore, the contractors may be partially liable for their failure to warn of the risks of the toxins. Other plaintiffs purchased the wood on their own and could be found to have assumed the risks of the toxic wood treatment, allowing for the possibility of comparative fault. Moreover, some of the plaintiffs may seek to allege that they suffered physical injury from the wood, others may seek compensation for environmental remediation, and others, the diminished value of their homes. *Id.* Accordingly, we found the named plaintiffs could not show that the disposition of at least one common issue would resolve the claims of a significant number of the proposed class members and, therefore, class resolution of the

litigation was not warranted. *Id.* at 1061.

¶ 25   We disagree with the instant defendant's contention that based on *Kitzes*, we must find the trial court's decision to certify the class improper here. The same types of individualized inquiries that precluded class certification in *Kitzes* do not apply here. During the time frame for class membership, all of the defendant's form invoices contained the GPR charge, which each class member paid. The defendant's contention that each customer could have a different agreement and, therefore, different damages, based on specific communications with its assigned salesperson lacks merit given that each invoice contained the GPR charge, which was assessed at the same rate to all customers. Nor does the defendant tell us why the validity of this uniformly applied charge should turn on the terms of the agreement between the defendant and its customers. Clearly, the uniformly assessed charge makes the damages of each class member easy to determine: from December 11, 2001, through June 28, 2002, the GPR was invoiced at $2 and beginning July 11, 2002, the GPR increased to $3.

¶ 26   The plaintiff argued for class certification based on its contention that the defendant improperly cast its administrative costs as a governmentally required charge, misleading all of its customers as to the true nature of the uniformly applied GPR charge. The plaintiff maintains that the defendant's contention that it explained this charge to all of its customers, even if true, does not mean there are individual issues to resolve. If it is determined by the fact finder that the charge was not deceptive, but merely misunderstood, the class action will fail. The facts of this case do not require the broad individualized inquiries of *Kitzes*.

¶ 27   In any event both *Kitzes* and *Key* are examples of rulings by the circuit court's to certify or decertify a class, which on review, will not be reversed absent an abuse of discretion. We found no abuse of discretion in either *Kitzes* or *Key.* The instant case is consistent with each case in that regard.

¶ 28   We agree with the plaintiff that this case fits the pattern of cases routinely certified as class actions by Illinois courts. See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734 (1994) (resolved as a class action, the court held the commodity option contracts broker's disclosure statement was misleading, in violation of the Illinois Consumer Fraud Act, because the "foreign service fee" to be charged investors was a commission from which it would receive compensation); *Harrison Sheet Steel Co. v. Lyons*, 15 Ill. 2d 532, 155 N.E.2d 595 (1959) (class action was proper where the defendant refused to refund illegal occupation taxes collected from its customers); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1003, 803 N.E.2d 1020 (2004) ("The primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members. The propriety of such a uniform practice is amendable to being resolved in a class action.").

¶ 29   The National Association of Consumer Advocates and the Illinois Trial Lawyers Association filed an *amici curiae* brief in support of the plaintiff in this case. In their brief, the associations argue this case is an ideal case for class certification because the plaintiff's claims concern the defendant's "uniform" conduct toward the class and the defendant "uniformly" disputes liability to all of the class members. The associations argue that because the defendant "disputes liability categorically," claiming the GPR charge was clearly

disclosed in writing and by explanation of its salespeople to its customers, the defendant disputes liability to all class members such that class action treatment of the issue is appropriate. The associations take no position on the merits of the plaintiff's claim that the defendant acted improperly, particularly with regard to the plaintiff's claim that the salespeople of the defendant failed to disclose the true nature of the GPR to its customers. However, the associations agree that the dispute should be resolved on a class basis as the trial court found. The associations contend the courts developed the class action to handle cases just like this one and cite *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)), as support for their position:

> " 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.' "

¶ 30    We agree with the plaintiff and the associations that this case is of the type in which class resolution is appropriate. We also find, on the record before us, the defendant has failed to show the trial court abused its discretion in finding that a class action is the appropriate method for the fair and efficient adjudication of the present controversy. The defendant merely recites arguments previously raised before the trial court, without specifically alleging how the trial court abused its discretion in ruling as it did. The defendant contends a class action will not result in a fair and efficient adjudication of the controversy because "common issues are not predominate and individuals must be adjudicated on a case-by-case basis." However, the defendant offers no factual support for its contentions, other than those it raised before the trial court in its response to the plaintiff's request for class certification.

¶ 31    Implicit in its decision to grant class certification is the trial court's finding that common questions of law and fact, based on the defendant's uniformly applied billing practices, predominate over any individual questions among the class members. We infer those common issues to include: whether the defendant made actionable misrepresentations or omissions of material fact in selling or servicing appliances for its customers by misrepresenting the actual price of those products or services in the contract, as represented by the parties' invoices, through the inclusion of the GPR charge, and whether, by labeling the GPR charge as it did, the defendant made actionable misrepresentations or omissions of material fact that the charge was a governmentally mandated fee.

¶ 32    "Once the trial court finds that a predominating question of fact or law exists, the presence of individual questions does not necessarily defeat class certification." *P.J.'s Concrete*, 345 Ill. App. 3d at 1003. The defendant argues that individual issues regarding deception and damages preclude class certification in this case. However, just as we found in *P.J.'s Concrete*, where a defendant is alleged to have acted wrongfully in the same manner toward the entire class, the trial court may properly find common questions of law or fact that predominate over questions affecting only individual members. *Id.* In *P.J.'s Concrete*, the uniform billing practice was the cell phone company's improper collection of taxes from customers in unincorporated areas. *Id.* at 995. Here, it was the defendant's uniform collection

of the GPR charge. Where liability is premised on a common practice uniformly applied, as it is here, it is proper for the trial court to find the plaintiff's claims present questions of fact and law, common to the class, that predominate over questions affecting only individual members of the class. See *Slimack v. Country Life Insurance Co.*, 227 Ill. App. 3d 287, 299, 591 N.E.2d 70 (1992) ("[P]laintiffs' claims center upon the defendants' statewide plan and practice of reassigning blocks of accounts from existing agents, not to better serve a policyholder but to finance new agents or to coerce existing agents to meet certain production requirements not included in their contracts with the defendants. We conclude that these are questions of fact and law common to the class that predominate over questions affecting only individual members of the class.").

¶ 33 To reiterate, the defendant's contention that the plaintiff in this case failed to meet the commonality requirement lacks merit; we agree with the circuit court that the plaintiff met each of the four prerequisites for maintaining a class action. Because the defendant raises issue only with the commonality requirement of class certification, we do not review the circuit court's decision that the plaintiff met the remaining three prerequisites. Accordingly, we hold the trial court did not abuse its discretion in finding the plaintiff met all four of the requirements for class certification under section 2-801 of the Code.

¶ 34                                            CONCLUSION

¶ 35 The defendant has failed to show the trial court abused its discretion in certifying the class, finding a class action the appropriate method to amend the defendant's allegedly improper uniform billing scheme toward each member of the class. Inherent in the trial court's certification is its finding that the factual allegations of the plaintiff's complaint established the existence of a class action because the defendant had a uniform policy of applying a GPR charge to each customer invoice, which because of how it was labeled could have been misleading to all of the defendant's customers and, therefore, constitutes a common question of law or fact, which predominated over any issues specific to the individual class members.

¶ 36 Affirmed.